897 F.2d 1519
 16 Fed.R.Serv.3d 1079
 WEST COAST THEATER CORPORATION; Paramount Management
Corporation; Paramount Northwest Properties,
Inc.; Israel Volotin; Rhea Volotin;
Eulysses Lewis; Norman
Volotin, Plaintiffs-Appellant,
and
Kenneth C. Dixson, Esq., Intervenor,
v.
CITY OF PORTLAND; Portland Performing Arts Center
Committee; Ronald Ragan; Robert Scanlan; Mildred Schwab,
City Commissioner; Ariel Rubenstine; David Leiken; Pat
Harrington; John Schwabe; Oregonian Publishing Company;
William M. Dale, Hon.; George M. Joseph, Chief Judge,
Oregon Court of Appeals; Berkeley Lent; Edwin J. Peterson,
Chief Justice; Donald R. Stark; B.B. Lyon; Chris Thomas;
Richard McCann; Robert Ames; Oregon Symphony Association;
Downtown Community Association; David Lau, Defendants-Appellees.
 No. 87-4356.
D.C. No. CV-86-802-GEJ.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Jan. 9, 1990.*
Decided March 26, 1990.
 
 Ken Dixson, Portland, Or., for plaintiffs-appellants, West Coast Theater Corp., Paramount Northwest Properties, Inc., Israel Volotin, Estate of Rhea Volotin, Norman Volotin.
 Eulysses Lewis, Seattle, Wash., pro se.
 Harry Auerbach, Deputy City Atty., Portland, Or., for defendants-appellees, City of Portland, Robert Scanlan, Pat Harrington, Donald R. Stark, and Barbee B. Lyon.
 Gerald R. Pullen, Portland, Or., for defendant-appellee John Schwabe.
 Michael G. Holmes, Spears, Lubersky, Bledsoe, Anderson, Young & Hilliard, Portland, Or., for defendant-appellee Oregonian Publishing Co.
 Robert M. Atkinson, Virginia L. Linder and Dave Frohnmayer, Appellate Div., Salem, Or., for defendants-appellees William M. Dale, George M. Joseph, Berkeley Lent, and Edwin Peterson.
 Appeal from the United States District Court for the District of Oregon.
 Before WRIGHT, TANG and CANBY, Circuit Judges.
 TANG, Circuit Judge:
 
 
 1
 West Coast Theater ("West Coast") appeals (1) the dismissal of its complaint under Federal Rule of Civil Procedure 41(b) for lack of prosecution; (2) the grant of summary judgment in favor of the City of Portland, Robert Scanlan, Pat Harrington, Donald Stark and Barbee Lyon ("the Portland defendants"); (3) the granting of (i) Federal Rule of Civil Procedure 11 sanctions in favor of the Portland defendants and (ii) 28 U.S.C. Sec. 1927 sanctions in favor of the Oregonian Publishing Company ("the Oregonian"); and (4) the Federal Rule of Civil Procedure 4(j) dismissal of its complaint against (i) Oregon Supreme Court Justices Edwin Peterson and Berkeley Lent, Oregon Court of Appeals Judge George Joseph, and former Oregon trial judge William Dale ("the judicial defendants") and (ii) the Oregonian.
 
 
 2
 We affirm. Because we conclude that West Coast has brought a frivolous appeal, we also award costs and attorney fees pursuant to Federal Rule of Appellate Procedure 38 as sanctions.
 
 FACTS AND PROCEEDINGS
 
 3
 West Coast's[1] current action arises out of an earlier Oregon state court eminent domain proceeding. In that earlier proceeding, the City of Portland, Oregon acquired West Coast's property for use as part of its Performing Arts Center. West Coast was awarded $4,100,000 as just compensation for the property by a jury verdict in July 1983. West Coast appealed the judgment to the Oregon Court of Appeals.
 
 
 4
 In April 1984, the Oregon Court of Appeals dismissed West Coast's appeal because it had failed to serve properly all of the parties to the appeal. The Oregon Court of Appeals subsequently denied reconsideration of its ruling. West Coast then petitioned the Oregon Supreme Court for review. The Oregon Supreme Court rejected the petition in July 1984.
 
 
 5
 On June 23, 1986, West Coast filed a complaint in federal court against twenty-one named defendants. The defendants included the City of Portland, Portland City Commissioners, members of the Performing Arts Center committee, the Oregonian, the various judges involved with the state court proceeding and the lawyers who represented the City of Portland.
 
 
 6
 In its complaint, West Coast asserts a right to recover under 42 U.S.C. Secs. 1981, 1982, 1983, and 1985; 15 U.S.C. Secs. 1-7, and the First, Fourth, Fifth, Seventh, Ninth, Thirteenth, and Fourteenth Amendments to the Constitution. West Coast also seeks injunctive relief under 28 U.S.C. Secs. 2201 and 2202.
 
 
 7
 When the complaint was filed, the district court issued an order establishing (1) October 21, 1986 as the discovery cut-off date and (2) November 20, 1986 as the due date for lodging the pretrial order.
 
 
 8
 West Coast never properly served the June 23, 1986 complaint upon the judicial defendants and the Oregonian. Instead, West Coast tried to serve these defendants with an earlier incomplete draft of the complaint, which contained just 32 pages as opposed to the 39 pages in the filed complaint.
 
 
 9
 On November 10, 1986, the Portland defendants moved for summary judgment ("Portland summary judgment"). On November 20, 1986, West Coast filed a motion to reopen discovery and extend the date for lodging the pretrial order. On November 20, 1986, the judicial defendants moved for summary judgment as well as dismissal under Federal Rules of Civil Procedure 12(b)(4), 12(b)(5) and 4(j). On December 15, 1986, the magistrate ordered discovery to be completed by January 20, 1987 and the pretrial order be lodged by February 20, 1987.
 
 
 10
 On January 23, 1987, three days after discovery was to be completed, West Coast filed another motion retroactively to extend discovery. At the hearing on this motion, the magistrate determined that West Coast had conducted no discovery. Consequently, the motion was denied.
 
 
 11
 On January 30, 1987, the Oregonian filed for summary judgment. In addition, the Oregonian moved for dismissal because West Coast failed properly to serve the complaint.
 
 
 12
 In a series of findings and recommendations in February, March, May and June of 1987, the magistrate made the following recommendations to the district court:
 
 
 13
 (1) the Portland summary judgment motion should be granted on the claims that had been fully, fairly and necessarily litigated in state court because the full faith credit clause and 28 U.S.C. Sec. 1738 require federal courts to give the Oregon state court determinations preclusive effect;
 
 
 14
 (2) the Portland summary judgment should be granted on the remaining claims because West Coast had failed to present any evidence to support its claims;
 
 
 15
 (3) West Coast and its attorney should pay Rule 11 sanctions to the City of Portland in the sum of $10,370.80;
 
 
 16
 (4) the judicial defendants and the Oregonian should be dismissed from the suit pursuant to Rule 4(j) because West Coast failed properly to serve these defendants and failed to show any "good cause" for this failure;
 
 
 17
 (5) the Oregonian should be granted sanctions against West Coast's counsel under 28 U.S.C. Sec. 1927 which makes counsel liable for unreasonable and vexatious multiplication of the proceedings; and
 
 
 18
 (6) the complaint should be dismissed under Federal Rule of Civil Procedure Rule 41(b) for lack of prosecution because West Coast (i) failed to lodge its pretrial order; (ii) failed to appear at a show cause hearing as to why the complaint should not be dismissed for lack of prosecution; (iii) failed to respond in any way to the pretrial order or the show cause hearing; and (iv) failed to conduct any discovery whatsoever in the case since January of 1987.
 
 
 19
 West Coast failed to file any objections to the magistrate's findings and recommendations. The district court adopted all of the magistrate's findings and recommendations and dismissed the entire action. West Coast filed a timely appeal.
 
 DISCUSSION
 1. Lack of Prosecution
 
 20
 West Coast contends that the district court erred when it dismissed the action for lack of prosecution because: (1) West Coast had a non-frivolous excuse; (2) the defendants suffered no prejudice; (3) the magistrate denied the requests to reopen discovery; (4) the delays resulted from the conduct of its attorney; and (5) no warnings were given. We disagree.
 
 
 21
 We review a district court's order dismissing an action for lack of prosecution for an abuse of discretion. Carey v. King, 856 F.2d 1439, 1440 (9th Cir.1988). "In determining whether an abuse of discretion has occurred, a number of factors are relevant, including the plaintiff's diligence, the trial court's need to manage its docket, the danger of prejudice to the party suffering the delay, the availability of alternate sanctions, and the existence of warning to the party occasioning the delay." Hamilton v. Neptune Orient Lines Ltd., 811 F.2d 498, 499 (9th Cir.1987).
 
 
 22
 A plaintiff cannot avoid dismissal by arguing that he or she is an innocent party who will be made to suffer for the errors of his or her attorney. Id. at 500. The established principle is that the faults and defaults of the attorney may be imputed to, and their consequences visited upon, his or her client. In re Hill, 775 F.2d 1385, 1387 (9th Cir.1985).
 
 
 23
 However, because dismissal is a drastic step, this court will review the record to see if (1) the district court could have adopted less drastic alternatives, see id., and (2) the district court warned the plaintiff that dismissal was imminent. Hamilton, 811 F.2d at 500.
 
 
 24
 Here, we conclude that the district court did not abuse its discretion. West Coast prosecuted its case irresponsibly. West Coast (1) filed a number of untimely motions; (2) failed to appear at a number of scheduled hearings, including the show cause hearing on dismissal of the proceedings for lack of prosecution; (3) never sought any discovery, even though it requested and obtained one extension; and (4) delayed its service of the complaint to the last minute, and then served a number of the defendants with the wrong complaint.
 
 
 25
 None of West Coast's arguments entitle it to relief.
 
 
 26
 (1) Non-Frivolous Excuse
 
 
 27
 West Coast seems to offer two excuses for its delay: (1) the death of counsel's cousin prior to the June 1, 1987 show cause hearing; and (2) that the large number of defendants prevented West Coast from conducting discovery.
 
 
 28
 Neither of these excuses is valid. West Coast's counsel claims that he could not appear at the June 1, 1987 hearing because a first cousin died on May 20, 1987. This event does not excuse West Coast from either responding in writing to the show cause hearing or requesting that the hearing be rescheduled. Moreover, the event neither explains nor excuses West Coast's failure to file the pretrial order between February 20, 1987, the date it was due and May 12, 1987, the date the show cause order issued.
 
 
 29
 Indeed, there were many defendants. However, this does not explain or excuse West Coast's failure to conduct any discovery. West Coast, as plaintiff, chose to include the numerous defendants. If there was a difficulty in coordinating the case because of the number of defendants, West Coast had no cause to complain because the breadth of the suit was its own choice.
 
 
 30
 (2) Lack of Prejudice
 
 
 31
 West Coast claims that the defendants suffered no prejudice by the delays. However, this is not true. The defendants' responses to West Coast's motions to extend time cost them time and money in the preparation and filing of opposition memoranda and appearances at hearings.
 
 
 32
 (3) Denial of the Request to Reopen Discovery
 
 
 33
 West Coast's claim that the dismissal for lack of prosecution was improper because the magistrate denied its motion to reopen discovery is imperfect for a number of reasons. First, the magistrate had granted a retroactive extension of discovery from October 21, 1986 to January 20, 1987 before he denied the further request to reopen discovery. Second, West Coast filed its motion to reopen discovery three days after the original discovery period ended. It is significant that West Coast was not asking for an extension, but rather a retroactive reopening. The difference is considerable. Whereas a request for an extension acknowledges the importance of a deadline, a retroactive request suggests that the party paid no attention at all to the deadline. Third, West Coast misrepresents the length of the discovery period available to it. In one part of its brief, it claims it had only 22 days to conduct discovery whereas the original scheduling order granted West Coast 120 days. Fourth, as mentioned earlier, West Coast never conducted any discovery against any of the defendants, and the denial of a second retroactive reopening cannot be shown to be prejudicial. Further, West Coast has not offered any good reason for reopening the discovery period. West Coast claims that the case is complex. While that claim may warrant consideration, it furnishes no excuse for the failure to conduct any discovery at all.
 
 
 34
 (4) Conduct of Its Attorney
 
 
 35
 As indicated before, West Coast cannot escape dismissal solely on the ground that the fault for its delays lay entirely with its attorney.
 
 
 36
 (5) Alternatives Short of Dismissal
 
 
 37
 Contrary to West Coast's assertion, the magistrate and the district court did use a number of alternatives short of dismissal to prompt West Coast to manage responsibly the course of litigation and to end unnecessary delays. First, the magistrate and the district court denied a total of seven untimely motions to extend time. Second, the magistrate recommended and the district court approved Rule 11 sanctions in favor of the Portland defendants for filing a pleading not well grounded in fact, and in part, not warranted by existing law. Third, the magistrate recommended and the district court approved the granting of sanctions under 28 U.S.C. Sec. 1927 to the Oregonian because of West Coast's unreasonable and vexatious multiplication of the litigation. Lastly, contrary to West Coast's assertion, the magistrate explicitly warned West Coast in his show cause order that its complaint could be dismissed for lack of prosecution.
 
 
 38
 Even after the foregoing measures, West Coast still failed either to appear at the June 1, 1987 show cause hearing, to file papers of opposition, or to ask for rescheduling of the hearing. On this record, it is difficult to comprehend what other measure would have caused West Coast to act responsibly. Although Rule 41(b) dismissal is a drastic measure, it was appropriate in the face of such complete non-cooperation.
 
 2. Summary Judgment
 
 39
 West Coast contends that the district court erred in granting the Portland summary judgment. With respect to those issues for which the district court granted summary judgment on the basis of preclusion, West Coast asserts that summary judgment was unwarranted because the Oregon courts failed to give it a full and fair opportunity to litigate its claims. For those issues which the district court granted summary judgment because West Coast failed to create a dispute of material fact, West Coast contends that (1) the Portland defendants failed to establish the lack of a dispute; and (2) in any event, West Coast lacked adequate time for discovery. We disagree.
 
 
 40
 a) Standard of Review
 
 
 41
 This court reviews a grant of summary judgment de novo. In re Apple Computer Securities Litigation, 886 F.2d 1109, 1112 (9th Cir.1989).
 
 
 42
 Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "[T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." Id.
 
 
 43
 b) Merits
 
 
 44
 (1) Precluded Issues
 
 
 45
 "It is now settled that a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered." Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); accord Clark v. Yosemite Community College Dist., 785 F.2d 781, 784 (9th Cir.1986); see also 28 U.S.C. Sec. 1738.
 
 
 46
 Under Oregon law, collateral estoppel prevents relitigating an issue decided in a previous action if: (1) the issue decided in the previous action is identical to the one now presented; (2) the prior action resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is sought was a party or in privity with a party to the prior action; (4) the issue for which collateral estoppel is sought was essential to the prior judgment; and (5) the party against whom collateral estoppel is sought had a full and fair opportunity to litigate the issue in the prior action. See State Farm Fire & Casualty v. Reuter, 299 Or. 155, 158-59, 700 P.2d 236, 238 (1985).
 
 
 47
 Here, the only element which West Coast contests is the requirement of a "full and fair opportunity" in the first action to litigate the issues for which collateral estoppel is sought. West Coast argues that this requirement was not satisfied because several of the plaintiffs in the current action were not allowed to participate as witnesses or parties in the state action.
 
 
 48
 West Coast's claim is rejected for two reasons. First, contrary to West Coast's assertion, all plaintiffs in the current action participated in the prior state action. All were (1) named in West Coast's amended answer; (2) listed on the notices of appeal to the Oregon Court of Appeals; (3) named by the Oregon Court of Appeals in its order denying West Coast's appeal and its order denying reconsideration; and (4) listed as petitioners in the Oregon Supreme Court's order denying review. Second, West Coast had a full and fair opportunity to litigate its claims in state court. It had a jury trial, and then petitioned for review to both the Oregon Court of Appeals and the Oregon Supreme Court.
 
 
 49
 (2) Non-Precluded Issues
 
 
 50
 (i) Portland's burden on summary judgment
 
 
 51
 "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). But there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Id. (emphasis in original).
 
 
 52
 Here, we conclude that the Portland defendants met their initial burden of informing the district court of the basis of their motion and identifying those portions of the record which they believed entitled them to summary judgment.
 
 
 53
 (ii) Lack of discovery
 
 
 54
 As previously indicated, we conclude that West Coast's assertions about inadequate opportunity for discovery lack merit.
 
 
 55
 (iii) West Coast's showing on summary judgment
 
 
 56
 Once the moving party meets its burden, "[t]he burden then shifts to the nonmoving party to present evidence sufficient to support a verdict in its favor on every element of its claim for which it will carry the burden of proof at trial." In re Apple Computer, 886 F.2d at 1113.
 
 
 57
 Here, we conclude that West Coast failed to meet its burden on the non-precluded issues, and hence summary judgment was appropriate on those issues. West Coast does not argue it presented sufficient evidence to meet its burden. It claims only that inadequate time for discovery excused it from meeting its burden. However, as we indicated, the lack of time for discovery excuse is meritless.
 
 3. Sanctions
 
 58
 West Coast contends that sanctions should not have been granted either for the Portland defendants under Rule 11 or for the Oregonian under Section 1927. We disagree.
 
 
 59
 a) Standard of Review
 
 
 60
 "The review of sanctions imposed under Fed.R.Civ.P. 11 requires three separate inquiries." Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1127 (9th Cir.1989). "First, whether specific conduct violated Rule 11 is a legal issue reviewable de novo." Id.; see also Mackey v. Pioneer Nat'l Bank, 867 F.2d 520, 526 (9th Cir.1989). "Second, any disputed factual determinations are reviewed under a clearly erroneous standard." Woodrum, 866 F.2d at 1127; accord Mackey, 867 F.2d at 526. "Third, the appropriateness of the sanction imposed is reviewed for an abuse of discretion." Woodrum, 866 F.2d at 1127; accord Mackey, 867 F.2d at 526.
 
 
 61
 We review "the award of Section 1927 sanctions for abuse of discretion." Soules v. Kauaians For Nukolii Campaign Comm., 849 F.2d 1176, 1185 (9th Cir.1988).
 
 
 62
 b) Merits
 
 
 63
 (1) Rule 11 Sanctions
 
 
 64
 "Under the 1983 amendments to Rule 11, an attorney signing any motion in federal court warrants that the motion is well-grounded in fact, that it is warranted by existing law or a good faith argument for an extension, modification or reversal of existing law, and that it is not filed for an improper purpose." Golden Eagle Distributing Corp. v. Burroughs Corp., 801 F.2d 1531, 1536 (9th Cir.1986). "Breach of the warranty gives rise to mandatory sanctions against the represented party, the lawyer, or both." Id.
 
 
 65
 " 'Rule 11 applies only to the initial signing of a "pleading, motion, or other paper." ' " Cunningham v. County of Los Angeles, 879 F.2d 481, 490 (9th Cir.1988) (quoting Oliveri v. Thompson, 803 F.2d 1265, 1274 (2nd Cir.1986), cert. denied, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987)), cert. denied, --- U.S. ----, 110 S.Ct. 757, 107 L.Ed.2d 773 (1990). When evaluating the pleading, we apply an objective standard and look at the attorney's conduct at the time of signing. Community Elec. Serv. v. National Elec. Contractors Ass'n, Inc., 869 F.2d 1235, 1243 (9th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 236, 107 L.Ed.2d 187 (1989).
 
 
 66
 "An award of Rule 11 sanctions raises two competing concerns: the desire to avoid abusive use of the judicial process and to avoid chilling zealous advocacy." Hudson v. Moore Business Forms, Inc., 836 F.2d 1156, 1159-60 (9th Cir.1987).
 
 
 67
 Here, we uphold the granting of Rule 11 sanctions for the Portland defendants. West Coast's complaint is neither well grounded in fact, nor warranted by existing law, or any good faith argument for extension or reversal of existing law. After a reasonable inquiry, West Coast's counsel could not have had an objectively reasonable basis for any portion of the complaint.
 
 
 68
 First, as mentioned earlier, West Coast raises issues precluded from relitigation by collateral estoppel.
 
 
 69
 Second, West Coast's 42 U.S.C. Sec. 1981 claims are not well grounded in fact. To assert a colorable Section 1981 claim, West Coast must show intentional invidious discrimination. See, e.g., Evans v. McKay, 869 F.2d 1341, 1344 (9th Cir.1989). However, West Coast fails to allege any facts to support a claim of intentional discrimination.
 
 
 70
 Third, neither are West Coast's 42 U.S.C. Sec. 1982 claims well grounded in fact. Racial discrimination must be shown to state a colorable Section 1982 claim. See, e.g., Occhino v. Northwestern Bell Telephone Co., 675 F.2d 220, 224 (8th Cir.), cert. denied, 457 U.S. 1139, 102 S.Ct. 2971, 73 L.Ed.2d 1358 (1982). West Coast fails to allege any facts to support a finding of racial discrimination.
 
 
 71
 Fourth, neither are West Coast's 42 U.S.C. Sec. 1983 claims well grounded in fact nor law. "To state a claim under Sec. 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 43, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988). West Coast's complaint fails to identify any federally protected right violated in connection with the state court eminent domain proceeding to warrant a Section 1983 claim.
 
 
 72
 Fifth, West Coast's 42 U.S.C. Sec. 1985 claim is also not well grounded in fact. A conspiracy must be shown to satisfy the requirements of Section 1985. See 42 U.S.C. Sec. 1985. West Coast alleged no facts to support the existence of a conspiracy. It simply makes the bare assertion that there was a conspiracy.
 
 
 73
 Sixth, none of West Coast's Fourth, Fifth, Seventh, Ninth, Thirteenth and Fourteenth Amendment claims are well grounded in either fact or law. There is a complete failure to articulate any theory of how the defendants violated these amendments. Neither does West Coast point to any facts that support any of these claims.
 
 
 74
 Seventh, West Coast's antitrust claims against the City of Portland defendants are also not well grounded in either fact or law. West Coast apparently rests its antitrust claims on a conspiracy theory, but as we have noted, West Coast alleges no facts to support the existence of a conspiracy. Moreover, to state an antitrust claim against a municipality, the plaintiff must show that the municipality did not act pursuant to its official capacity. 15 U.S.C. Secs. 35(a) & 36(a). Here, the City of Portland acted in its official capacity under Oregon law which expressly provides that cities may appropriate any private real estate for any public or municipal use. See Ore.Rev.Stat. Sec. 223.005(1). This statutory exemption thus prevents West Coast from maintaining an antitrust suit against the City of Portland.
 
 
 75
 Lastly, West Coast's claim for declaratory or injunctive relief pursuant to 28 U.S.C. Secs. 2201 and 2202 is not well grounded in fact or law. As set out in the preceding paragraphs, West Coast has demonstrated no wrongs from which protection may be granted.
 
 
 76
 In sum, the entire complaint was devoid of merit. Each and every claim lacked an adequate foundation in fact and/or in law. West Coast's complaint is a collection of bare accusations unsupported by allegations of fact. Moreover, West Coast has failed to produce any evidence to support any of its claims since the complaint was filed. Some of the accusations were precluded as a matter of law. Taken together, the lack of adequate factual allegations as well as West Coast's subsequent failure to produce any evidence, compels us to the conclusion that there was no factual basis to support West Coast's complaint. The Rule 11 sanctions are affirmed.
 
 
 77
 (2) 28 U.S.C. Sec. 1927
 
 
 78
 Section 1927 provides in full that: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. Sec. 1927.
 
 
 79
 Although Rule 11 sanctions attach only on the basis of the attorney's signature on the pleadings, motion, or other paper, 28 U.S.C. Sec. 1927 sanctions are available for later proceedings. See Cunningham, 879 F.2d at 490. Section 1927 sanctions require a bad faith finding. See Soules, 849 F.2d at 1185. " 'Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.' " Id. at 1185-86 (quoting Estate of Blas v. Winkler, 792 F.2d 858, 860 (9th Cir.1986)).
 
 
 80
 Here, we conclude that West Coast's conduct warranted the granting of 28 U.S.C. Sec. 1927 sanctions for the Oregonian. West Coast's counsel failed (1) to provide any evidence that the Oregonian published false stories as the result of a discriminatory intent; (2) to answer interrogatories; (3) to respond to a document demand; and (4) to drop the case after it had improperly served the Oregonian. Thus, the record indicates that West Coast's counsel recklessly proceeded with the litigation despite a complete lack of factual support or proper service of his opponent. The district court did not abuse its discretion in finding such conduct to be clearly reckless and in bad faith.
 
 4. Rule 4(j) Dismissals
 
 81
 West Coast contends that the Rule 4(j) dismissals entered for the judicial defendants and the Oregonian should be reversed for three reasons. First, West Coast made a reasonable effort to serve all defendants. Second, because West Coast served the Oregonian timely, there should be no dismissal absent proof that the Oregonian suffered prejudice. Third, West Coast could have shown good cause for any delay and have demonstrated reasonable diligence if a hearing had been granted.
 
 
 82
 a) Standard of review
 
 
 83
 This court reviews "a district court's dismissal of a complaint pursuant to Rule 4(j) for abuse of discretion." Wei v. Hawaii, 763 F.2d 370, 371 (9th Cir.1985).
 
 
 84
 b) Merits
 
 
 85
 Rule 4(j) of the Federal Rules of Civil Procedure provides that:
 
 
 86
 If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.
 
 
 87
 Fed.R.Civ.P. 4(j).
 
 
 88
 "Neither rule 4(j) nor its scant legislative history define 'good cause.' " Wei, 763 F.2d at 371. "The only example of good cause provided by the legislative history is the obvious one of a defendant's evasion of service." Id. This court has held that mere inadvertence does not qualify as good cause for a failure to comply with Rule 4(j). Id. at 372.
 
 
 89
 Here, we conclude that the district court did not abuse its discretion in dismissing West Coast's complaint against the judicial defendants and the Oregonian for failure to comply with Rule 4(j). Despite its claim to the contrary, West Coast cannot point to any proof in the record to show that proper service occurred within 120 days. Moreover, West Coast's service of an incomplete draft complaint which was seven pages shorter than the complaint filed cannot be deemed to constitute compliance with Rule 4(j) because that Rule requires service of the filed complaint. Although West Coast claims it had "good cause" for failing to complete service properly, it has not given that reason to this court. Instead, it insists that the cause for the delay could be revealed at a hearing below. There is no rational reason why West Coast cannot state the cause for its delay before this court. Lastly, West Coast claims that no prejudice resulted from its failure to serve within 120 days. However, "prejudice" is not listed as a factor to be considered in Rule 4(j).
 
 CONCLUSION
 
 90
 The district court is affirmed on all the issues raised. The district court did not abuse its discretion in granting the Rule 41(b) dismissal for lack of prosecution. The district court properly granted summary judgment for the Portland defendants as well as the Rule 11 and Section 1927 sanctions. The district court dismissal of this case for failure to comply with Rule 4(j) was proper.
 
 
 91
 In addition, we conclude that this appeal was frivolous and we exercise our discretion to award as sanctions costs and attorney fees to the defendants pursuant to Federal Rule of Appellate Procedure 38.
 
 
 92
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a)
 
 
 [1]
 West Coast is the named plaintiff in the current action. The other plaintiffs are related corporate entities and the principal officers and shareholders of West Coast and the related entities. In the state eminent domain action, one of the officers/shareholders of West Coast was the named plaintiff and West Coast was a co-plaintiff. However, to simplify matters, we refer to West Coast as the plaintiff throughout this opinion