78 F.3d 431
 Fed. Sec. L. Rep. P 99,053, 33 Fed.R.Serv.3d 1099,
96 Cal. Daily Op. Serv. 1355,
96 Daily Journal D.A.R. 2305
 In re: KEEGAN MANAGEMENT CO., SECURITIES LITIGATION.
Michael MOORE, et al., Plaintiffs,
and
Lieff, Cabraser & Heimann; Elizabeth J. Cabraser, Appellants,
v.
KEEGAN MANAGEMENT COMPANY, a Delaware corporation, et al.,
Defendants-Appellees.
Michael MOORE, et al., Plaintiffs,
and
Richard L. Jaeger; Feldman, Waldman & Kline, Appellants,
v.
KEEGAN MANAGEMENT COMPANY, a Delaware corporation, et al.,
Defendants-Appellees.
 Nos. 94-15713, 94-16135.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Aug. 14, 1995*.
Decided March 1, 1996.
 
 Judith Resnik, University of Southern California Law Center, Los Angeles, California, Jerome B. Falk, Jr., Howard, Rice, Nemerovski, Canady, Robertson, Falk & Rabkin, San Francisco, California, for appellants.
 No appearance for appellees.
 Appeals from the United States District Court for the Northern District of California; Spencer M. Williams, District Judge, Presiding.
 Before FLETCHER, POOLE, and O'SCANNLAIN, Circuit Judges.
 Opinion by Judge POOLE; Partial Concurrence and Partial Dissent by Judge O'SCANNLAIN.
 POOLE, Circuit Judge:
 
 
 1
 We consider under what circumstances and pursuant to what authority attorneys may be sanctioned for the filing of a complaint. Because we find such circumstances not present here, we reverse the district court's order imposing $100,000 in sanctions against attorneys Elizabeth Cabraser and Richard Jaeger, and their respective law firms, Lieff, Cabraser & Heimann and Feldman, Waldman & Kline.
 
 
 2
 * The merits of this case, a securities class-action, are not at issue. The sole question on appeal is whether plaintiffs' counsel may be sanctioned for initiating this lawsuit.
 
 
 3
 Defendant Keegan Management was a franchisee of Nutri/System Weight Loss Centers ("Nutri/System"). It sold weight loss programs. In December 1989, Keegan made an initial public offering ("IPO") of stock at $7 per share. Stock rose to $10 per share within a few months.
 
 
 4
 In early 1990, controversy over the Nutri/System program broke out. A series of personal injury lawsuits alleging gall bladder problems resulting from weight-loss programs were filed against Nutri/System. In March, Congressional hearings on the diet industry aired testimony discussing the health risks associated with such programs, including the risk of gallstones from rapid weight loss. The Wall Street Journal published an article discussing health problems associated with the Nutri/System program. Amidst these events and other reports, Keegan's stock fell to 10% of its peak value.
 
 
 5
 Appellant law firms Lieff, Cabraser & Heimann and Feldman, Waldman & Kline were approached in late 1990 by potential clients interested in filing securities fraud suits against Keegan based on the possibility that Keegan had knowingly or recklessly failed to disclose health risks associated with its program in the 1989 IPO. Attorneys Elizabeth Cabraser of Lieff, Cabraser and Richard Jaeger of Feldman, Waldman & Kline ultimately filed separate class action suits on February 19 and March 4, 1991. The two suits, Moore v. Keegan and Crespo v. Keegan, were consolidated. These suits alleged that Keegan misrepresented the Nutri/System program as safe at a time when it knew, or was reckless in not knowing, that the program might lead to gall bladder problems.
 
 
 6
 Keegan moved for summary judgment, and the district court granted the motion in May 1992. The district court found plaintiffs' evidence of scienter, and any known link between weight loss and gall bladder problems prior to December 1989, entirely lacking. That summer, Keegan moved for Rule 11 sanctions, but withdrew its motion as part of settlement negotiations. The parties reached a settlement in November 1992. However, prior to approval of that settlement, the district court sua sponte issued an order to show cause why Rule 11 sanctions should not be entered. The court conducted a hearing on April 27, 1993. On March 31, 1994, 154 F.R.D. 237, the district court entered sanctions against Cabraser and Jaeger in the amount of $25,000 each pursuant to Rule 11 and 28 U.S.C. § 1927. It also sanctioned the attorneys' firms $25,000 each pursuant to § 1927 and its inherent power. The district court concluded that the attorneys had been reckless in filing a complaint when they could at best only guess that Keegan recklessly failed to disclose health risks when issuing the IPO. The attorneys and firms have timely appealed.
 
 II
 
 7
 At the time the complaint in this case was filed, Rule 11 provided in relevant part that by signing a filing, an attorney certified
 
 
 8
 that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
 
 
 9
 Fed.R.Civ.P. 11. The district court sanctioned Cabraser and Jaeger pursuant to the first prong, the "frivolousness prong." We review the district court's entry of Rule 11 sanctions for an abuse of discretion. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 2460-61, 110 L.Ed.2d 359 (1990); Newton v. Thomason, 22 F.3d 1455, 1463 (9th Cir.1994).
 
 
 10
 Cabraser and Jaeger raise several challenges to these sanctions. We need address only one. Cabraser and Jaeger argue that the district court erred by failing to consider after-acquired factual evidence that would have adequately supported the complaint. We agree.
 
 
 11
 Under the district court's understanding of the law, the key question was, "What did plaintiffs know when they filed their lawsuit?" District Court 3/31/94 Order at 241. Applying this understanding, the district court excluded from consideration any evidence supporting the suit which was unknown to counsel at the time of filing. This included a scientific study published in August 1989--several months before the IPO--suggesting a weight loss/gallstone link, as well as a declaration from plaintiffs' expert Dr. J.W. Marks reviewing the scientific literature and asserting that such a link was well-established prior to the IPO. These exclusions were dispositive; the district court acknowledged that "if, prior to filing the complaint, Plaintiffs had in their possession the same information that they offered in opposition to summary judgment, it would have been sufficient to justify filing this lawsuit." District Court 3/31/94 Order at 241.
 
 
 12
 In effect, the district court applied a subjective-objective test. Objectively, would a reasonable attorney have believed plaintiffs' complaint to be well-founded in fact based on what plaintiffs' attorneys subjectively knew at the time? Appellants argue that an objective-objective test should apply: would a reasonable attorney have believed plaintiffs' complaint to be well-founded in fact based on what a reasonable attorney would have known at the time? Alternatively, the issue may be framed as whether the "reasonable inquiry" and "well-founded" requirements are conjunctive or disjunctive. An attorney may not be sanctioned for a complaint that is not well-founded, so long as she conducted a reasonable inquiry. May she be sanctioned for a complaint which is well-founded, solely because she failed to conduct a reasonable inquiry?
 
 
 13
 We conclude that the answer is no. In Townsend v. Holman Consulting Corp., 929 F.2d 1358 (9th Cir.1990) (en banc), an en banc panel of this court canvassed the circuit's Rule 11 law. It explained the requirements for sanctioning an attorney under the frivolousness prong:
 
 
 14
 Our cases have established that sanctions must be imposed on the signer of a paper if ... the paper is 'frivolous.' The word 'frivolous' does not appear anywhere in the text of the Rule; rather, it is a shorthand that this court has used to denote a filing that is both baseless and made without a reasonable and competent inquiry.
 
 
 15
 Id. at 1362 (citation omitted) (emphasis added). Townsend thus approves of the conjunctive requirement and the objective-objective rule. Townsend goes on to expressly embrace an objective-objective analysis in dismissing an attorney's lack of awareness of favorable precedent: "The fact that [counsel] did not cite that case ... does not render his argument sanctionable, since, objectively, his request was warranted by existing law." Id. at 1367.
 
 
 16
 We have subsequently reconfirmed Townsend 's objective-objective approach. "Because the frivolousness prong of Rule 11 is measured by objective reasonableness, see Zaldivar v. Los Angeles, 780 F.2d 823, 829 (9th Cir.1986), whether [a party] actually relied on" the cases which show its claims aren't frivolous is irrelevant. Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp., 982 F.2d 363, 370 (9th Cir.1992). The same rule must apply to the factual basis for a claim.
 
 
 17
 Some language in our prior cases suggests the opposite result. We have held that "an attorney violates [R]ule 11 whenever he signs a pleading, motion, or other paper without having conducted a reasonable inquiry into whether his paper is frivolous, legally unreasonable, or without factual foundation." Unioil, Inc. v. E.F. Hutton & Co., 809 F.2d 548, 557 (9th Cir.1986) (italics in original, bold added), cert. denied, 484 U.S. 822, 108 S.Ct. 83, 98 L.Ed.2d 45 (1987). Under Unioil, it appears not to matter whether a filing is frivolous, so long as the signing attorney has failed to conduct a reasonable inquiry. This language accords with the district court's subjective-objective approach, but is inconsistent with Townsend. To the extent Unioil endorses a subjective-objective test and authorizes sanctions solely for an unreasonable inquiry, we believe it has been implicitly overruled by the en banc decision in Townsend.[1]
 
 
 18
 Townsend compels our result. Its conclusion, we believe, is firmly rooted in the text and policies underlying Rule 11. Rule 11 must be read not only to give effect to the Rule's central deterrent goals, but also "in light of concerns that it will spawn satellite litigation and chill vigorous advocacy[.]" Cooter & Gell, 496 U.S. at 393, 110 S.Ct. at 2454. We do little to undermine the deterrent goals of the Rule by not sanctioning complaints which have merit on their face. The potential for such sanctions, however, may do much to increase the frequency of the collateral litigation that is Rule 11's unfortunate side effect.
 
 
 19
 We conclude that the district court based its decision on an erroneous view of the law when it focused on the plaintiffs' attorneys' subjective knowledge at the time they filed the complaint. It therefore abused its discretion. Cooter & Gell, 496 U.S. at 405, 110 S.Ct. at 2460-61; Newton, 22 F.3d at 1463. The district court itself conceded that plaintiffs' pretrial evidence was enough to render their complaint nonfrivolous. Under these circumstances, Rule 11 sanctions could not properly be imposed.
 
 III
 
 20
 The district court also justified its sanctioning of all appellants based on 28 U.S.C. § 1927. We review the entry of § 1927 sanctions for an abuse of discretion. Wages v. IRS, 915 F.2d 1230, 1235 (9th Cir.1990), cert. denied, 498 U.S. 1096, 111 S.Ct. 986, 112 L.Ed.2d 1071 (1991). We conclude that § 1927 cannot justify these sanctions either, for two independent reasons.
 
 
 21
 28 U.S.C. § 1927 provides in pertinent part that:
 
 
 22
 Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.
 
 
 23
 Because the section authorizes sanctions only for the "multipli[cation of] proceedings," it applies only to unnecessary filings and tactics once a lawsuit has begun. We have twice expressly held that § 1927 cannot be applied to an initial pleading. See Zaldivar, 780 F.2d at 831 (under § 1927, "the multiplication of proceedings is punished, thus placing initial pleadings beyond" the section's reach) (emphasis in original); Matter of Yagman, 796 F.2d 1165, 1187 (9th Cir.) ("Section 1927 does not apply to initial pleadings, since it addresses only the multiplication of proceedings. It is only possible to multiply or prolong proceedings after the complaint is filed."), amended, 803 F.2d 1085 (9th Cir.1986). In case these prior holdings were insufficiently clear, we restate the rule here. The filing of a complaint may be sanctioned pursuant to Rule 11 or a court's inherent power, but it may not be sanctioned pursuant to § 1927. "For a sanction to be validly imposed, the conduct in question must be sanctionable under the authority relied on." Cunningham v. County of Los Angeles, 879 F.2d 481, 490 (9th Cir.1988) (internal quotations omitted), cert. denied, 493 U.S. 1035, 110 S.Ct. 757, 107 L.Ed.2d 773 (1990). Here it was not. The district court's imposition of sanctions under § 1927 was an abuse of discretion.
 
 
 24
 We reverse as well for a second, independent reason. Even if § 1927 did apply to initial complaints, the district court applied the wrong legal standard in determining that sanctions were warranted.
 
 
 25
 The district court properly cited United States v. Blodgett for the proposition that § 1927 sanctions require a finding of recklessness or bad faith. 709 F.2d 608, 610 (9th Cir.1983). It also properly cited Lone Ranger Television, Inc. v. Program Radio Corp. for the proposition that a filing need not be entirely frivolous to warrant sanctions under the same section. 740 F.2d 718, 727 (9th Cir.1984). From this the district court drew the erroneous conclusion that a reckless, not-entirely-frivolous filing could be sanctioned.
 
 
 26
 To the contrary, section 1927 sanctions "must be supported by a finding of subjective bad faith." New Alaska Development Corp. v. Guetschow, 869 F.2d 1298, 1306 (9th Cir.1989). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." Estate of Blas v. Winkler, 792 F.2d 858, 860 (9th Cir.1986) (citations omitted); accord West Coast Theater Corp. v. City of Portland, 897 F.2d 1519, 1528 (9th Cir.1990); Soules v. Kauaians for Nukolii Campaign Committee, 849 F.2d 1176, 1185-86 (9th Cir.1988). For sanctions to apply, if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass. Thus, while it is true that reckless filings may be sanctioned, and nonfrivolous filings may also be sanctioned, reckless nonfrivolous filings, without more, may not be sanctioned.
 
 
 27
 The district court acknowledged that plaintiff's complaint was nonfrivolous. It found that appellants acted recklessly, but did not make a finding that they had acted with subjective bad faith or with an intent to harass. Therefore, under the proper Estate of Blas test, the district court could not sanction appellants pursuant to § 1927. Because the district court based its decision on an erroneous view of the law, it abused its discretion in imposing sanctions for this reason as well. Cooter & Gell, 496 U.S. at 405, 110 S.Ct. at 2460-61; Newton, 22 F.3d at 1463.
 
 IV
 
 28
 The district court also justified its sanctioning of the two appellant law firms by reference to its inherent powers. We review the district court's entry of sanctions under its inherent power for an abuse of discretion. Chambers v. NASCO, Inc., 501 U.S. 32, 55, 111 S.Ct. 2123, 2138, 115 L.Ed.2d 27 (1991); Lockary v. Kayfetz, 974 F.2d 1166, 1170 (9th Cir.1992), cert. denied, 508 U.S. 931, 113 S.Ct. 2397, 124 L.Ed.2d 298 (1993). Here again, we conclude that the district court abused its discretion because it applied the wrong legal standard in imposing sanctions.
 
 
 29
 The district court concluded based on an out-of-circuit district court case that it could sanction based on conduct that was reckless or an abuse of the judicial process. See Kobleur v. Group Hospitalization & Medical Servs., Inc., 787 F.Supp. 1444, 1453 (S.D.Ga.1991). It therefore believed it could sanction appellants based solely on its finding that they had acted recklessly.
 
 
 30
 Our precedents plainly require more. While recklessness may be the standard under § 1927, Blodgett, 709 F.2d at 610, it is an insufficient basis for sanctions under a court's inherent power. Instead, counsel's conduct must "constitute[ ] or [be] tantamount to bad faith." Roadway Express, Inc. v. Piper, 447 U.S. 752, 767, 100 S.Ct. 2455, 2465, 65 L.Ed.2d 488 (1980). In sanctioning counsel, "[c]ourts may not invoke [inherent] powers without a 'specific finding of bad faith.' " Yagman v. Republic Ins., 987 F.2d 622, 628 (9th Cir.1993) (quoting United States v. Stoneberger, 805 F.2d 1391, 1393 (9th Cir.1986)); accord Zambrano v. City of Tustin, 885 F.2d 1473, 1478 (9th Cir.1989) ("To insure that restraint is properly exercised, we have routinely insisted upon a finding of bad faith before sanctions may be imposed under the court's inherent power.")
 
 
 31
 The district court never made this required finding. Nor, for that matter, does the record as a whole support any finding of bad faith. Because the district court sanctioned based on recklessness alone, a legally insufficient basis, it abused its discretion. Cooter & Gell, 496 U.S. at 405, 110 S.Ct. at 2460-61; Newton, 22 F.3d at 1463. Consequently, the imposition of sanctions pursuant to the district court's inherent power was improper.
 
 V
 
 32
 "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." Operating Eng'rs Pension Trust v. A-C Company, 859 F.2d 1336, 1345 (9th Cir.1988). The same may be said of the power to sanction under 28 U.S.C. § 1927 and a court's inherent powers. We do not in any way countenance attorney misconduct, but in responding to perceived misconduct, courts must use care to exercise the sanctioning power only when they are legally authorized to do so.
 
 
 33
 In this case, sanctions could not as a matter of law be imposed on these appellants under any sanctioning authority. We therefore reverse the district court's order imposing sanctions in its entirety.
 
 
 34
 REVERSED.
 
 
 35
 O'SCANNLAIN, Circuit Judge, concurring in part and dissenting in part:
 
 
 36
 I concur in Parts I, III, and IV of the opinion; I respectfully dissent from Part II.
 
 
 37
 The court concludes that the district court's imposition of Rule 11 sanctions should be reversed, insisting that it is appropriate for a complaint to be filed on the basis of a hunch if it is ultimately well-grounded in fact and law.
 
 
 38
 In support of its ruling, the court cites our decision in Townsend v. Holman Consulting Corp., 929 F.2d 1358 (9th Cir.1990) (en banc), which noted that a filing is frivolous if it is "both baseless and made without a reasonable and competent inquiry." Id. at 1362. The court appears to hold that this language implicitly overrules Unioil, Inc. v. E.F. Hutton & Co., 809 F.2d 548 (9th Cir.1986), which held that "an attorney violates Rule 11 whenever he signs a pleading, motion or other paper without having conducted a reasonable inquiry into whether his paper is frivolous, legally unreasonable, or without factual foundation." Id. at 557. Since the Townsend language which the court cites is mere dicta, I must strongly disagree with the assertion that Unioil has been overruled.
 
 
 39
 The opinion also fails to evaluate what, in fact, happened in this case. The record is devoid of any showing of pre-filing investigation by the attorneys; rather the complaint appears to have been filed solely on the basis of several news reports and interviews with personal injury attorneys who had an interest in pending litigation involving the company. Although the case eventually stumbled upon some merit, Rule 11, properly construed, as it provided prior to 1993 (which would be appropriate under the circumstances), requires independent judgment and does not allow post-complaint information to serve as adequate justification.
 
 
 40
 While I agree that we must avoid the spawning of satellite litigation and the chilling of vigorous advocacy, we must also recall that the Supreme Court case instructing such behavior, Cooter & Gell v. Hartmarx Corp. et al., 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990), reminds us that Rule 11's primary function is to deter frivolous litigation. Id. at 393, 110 S.Ct. at 2454. The Rule's central goal is what compelled the Third Circuit, in Garr v. U.S. Healthcare, Inc., 22 F.3d 1274 (3d Cir.1994), to find that "a shot in the dark is a sanctionable event, even if it somehow hits the mark." Id. at 1279 (citing Vista Mfg., Inc. v. Trac-4 Inc., 131 F.R.D. 134, 138 (N.D.Ind.1990)). After all, if a "lucky shot could save the signer from sanctions, the purpose of Rule 11 'to deter baseless filings' would be frustrated." Garr, 22 F.3d at 1279 (citing Cooter & Gell, 496 U.S. at 393, 110 S.Ct. at 2454).
 
 
 41
 On this issue, I would remand to the district court with instructions to evaluate counsel's conduct in preparing and filing the complaint under the pre-1993 amendment language of Rule 11, but to separate out those matters which are covered by section 1927 and which are beyond the scope of Rule 11. Based on the present state of the record, I would be inclined to affirm the Rule 11 sanctions but to reverse the section 1927 sanctions for the reasons expressed by the court in other parts of its opinion.
 
 
 
 *
 Pursuant to Ninth Circuit Rule 34-4, the panel unanimously finds this case suitable for disposition without oral argument
 
 
 [1]
 We note in passing that while there is a split among the circuits on this question, our approach accords with that taken by the majority of the circuits to have considered the question. Compare Jones v. International Riding Helmets, Ltd., 49 F.3d 692, 695 (11th Cir.1995) (requiring lack of reasonable inquiry and frivolousness); Kale v. Combined Ins. Co. of America, 861 F.2d 746, 759 (1st Cir.1988) (same); Calloway v. Marvel Entertainment Group, 854 F.2d 1452, 1470 (2d Cir.1988) (same), rev'd in part on other grounds sub nom. Pavelic & LeFlore v. Marvel Entertainment Group, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989) with Garr v. U.S. Healthcare, Inc., 22 F.3d 1274 (3d Cir.1994) (sanctioning based solely on failure to conduct reasonable inquiry); Matter of Excello Press, Inc., 967 F.2d 1109, 1112 (7th Cir.1992) (holding that proper focus is reasonableness of inquiry, not frivolousness)