76770. CASGAR v. CITIZENS & SOUTHERN NATIONAL BANK.
(372 SE2d 815)

BANKE, Presiding Judge.

Thomas Casgar brings this appeal from a summary judgment entered against himself and three other defendants in a suit by The Citizens & Southern National Bank (C & S) to collect two promissory notes which he and the three other defendants had guaranteed.

In February of 1985, Casgar made a loan of $350,000 to Trademark Properties, Inc., as financing for a real estate development project being undertaken by Trademark in Gwinnett County. In May and August of 1985, C & S loaned Trademark $300,000 and $624,000, respectively, as further financing for the project. Each of these loans was evidenced by a promissory note secured by the development property and guaranteed by Trademark's principals, Alexander Perkowski and Robert Brindley. Although Casgar held a pre-existing security deed on a portion of the development property as security for his loan to Trademark, he agreed to subordinate his rights under this security deed to C & S, presumably to induce C & S to make the loans in question.

By late 1985, Trademark was in default of its repayment obligations under the two notes; and on February 6, 1986, Trademark, Perkowski, and Brindley agreed to transfer ownership of the development to Casgar and an associate, Thomas Peel. Pursuant to this agreement, Trademark conveyed title to the property to a corporation known as Thomas & Thomas Investments, Inc. On February 28, 1986, C & S executed an agreement consenting to the assumption. In return, it received from Casgar and Peel their personal guaranties of Thomas & Thomas's obligations under the two notes.

Under Thomas & Thomas's ownership of the development the notes went further into default, and in October of 1986, C & S began taking steps to foreclose upon the development property. Thomas & Thomas temporarily halted the threatened foreclosure by filing a bankruptcy petition; however, the bankruptcy court permitted C & S to proceed with the foreclosure; and on September 1, 1987, a foreclosure sale was conducted at which C & S acquired ownership of the development property for a bid of $600,000. The bank sought and obtained judicial confirmation of the sale, applied the $600,000 against the principal balance due on the notes, and, in the present action sought and obtained judgment against Casgar, Peel, Perkowski, and Brindley in the approximate amount of $191,000, representing the remaining principal due on the two notes, plus accrued interest, attorney fees, back taxes, and an unpaid loan fee.

In this appeal, Casgar contends that material issues of fact remain with respect to several defenses which he first raised some eight months after the suit was filed and some two months after C & S

filed its motion for summary judgment, to wit: that C & S had fraudulently induced him to guarantee the notes by making certain material misrepresentations; that he had received no consideration for guaranteeing the notes; that both he and C & S had been laboring under a mistake with respect to their legal rights at the time the guaranty agreements were signed; and that C & S had discharged him from his obligations under the guaranty agreements by certain action or inaction on its part which had adversely affected the value of the property and had thereby increased his risk and liability in connection with the indebtedness. C & S has moved for an additional award of damages against Casgar for filing a frivolous appeal. *Held*:

1. Casgar contends that C & S defrauded him into signing the guaranty agreements by misrepresenting the value of the development property, the quality of construction which had thus far been completed, the amount of money which would be required to complete the project, its willingness to renew and extend the existing indebtedness "and ensure successful completion of the project," and its right, under the terms of its existing security deeds, to approve the transfer of ownership from Trademark to Thomas & Thomas. Additionally, Casgar contends that the bank defrauded him by failing to disclose certain "problems" which were adversely affecting the development, such as difficulties in acquiring sewer easements and the existence of unpaid liabilities for materials.

The trial court correctly concluded that none of these alleged misrepresentations or concealments were actionable. It is evident from the record that it was precisely because of the financial and other difficulties facing the development that Casgar was motivated to assume ownership of the project from Trademark, Perkowski, and Brindley. Otherwise, his original $350,000 investment was in imminent danger of being wiped out by foreclosure. Clearly, C & S owed him no duty under the circumstances to act as his financial or legal adviser.

Misrepresentations are not actionable unless the hearer was justified in relying upon them in the exercise of common prudence and diligence. See *Charter Medical &c. Co. v. Ware Manor*, 159 Ga. App. 378, 380 (2) (283 SE2d 330) (1981). "[I]n the absence of special circumstances one must exercise ordinary diligence in making an independent verification of contractual terms and representations, failure to do which will bar an action based on fraud." *Hubert v. Beale Roofing*, 158 Ga. App. 145, 146 (279 SE2d 336) (1981). There being no suggestion that the relationship between Casgar and C & S was anything other than an "arms-length" business relationship, Casgar was not justified in looking to the bank for advice regarding the financial viability of the project, nor was the bank under any duty to list for him the various obstacles facing the successful completion of the pro-

ject. Accord *Reeves v. Habersham Bank*, 254 Ga. 615, 617 (1) (331 SE2d 589) (1985); *Foremost Ins. Co. v. Southeast Recovery*, 175 Ga. App. 794, 796 (3) (334 SE2d 375) (1985).

The bank's alleged misrepresentations regarding its willingness to extend additional credit in the future also are not actionable. "Although fraud can be predicated on a misrepresentation as to a future event where the defendant knows that the future event will not take place (cits.), fraud cannot be predicated on a promise which is unenforceable at the time it is made. (Cits.) A promise to make a loan with no specification of the interest rate or maturity date is not enforceable and will not support an action for fraud." *Beasley v. Ponder*, 143 Ga. App. 810 (240 SE2d 111) (1977).

2. Casgar contends that he received no consideration for guaranteeing the two notes because, contrary to certain representations allegedly made to him by C & S, the existing security deeds did not give C & S a right of approval over Trademark's conveyance of the development property to Thomas & Thomas. Assuming the correctness of the latter proposition, it does not follow that Casgar received no consideration for guaranteeing payment of the notes, for it is apparent from the record that the notes were already in default at the time the assumption took place and that, by agreeing to the assumption, the bank was giving Casgar and Peel an opportunity to cure the default and avoid foreclosure. It is well settled that forebearance by a creditor to collect an obligation that is otherwise due and payable will constitute sufficient consideration to support a contract. See, e.g., *Long v. Royster Co.*, 156 Ga. App. 152 (274 SE2d 134) (1980).

3. Casgar's contention that he and C & S were laboring under a mutual mistake with respect to the bank's legal rights under the security deeds amounts to nothing more than a restatement of his failure of consideration defense and is without merit for the reasons set forth in Division 2, supra.

4. Casgar contends that C & S increased his risk on the guaranty agreements by allowing the property to deteriorate during the six-month period between the date the bankruptcy stay was lifted and the date the foreclosure was ultimately consummated. However, the guaranty agreements expressly provided that the guarantor's obligations would not be affected "by reasons of any action taken or omitted by Lender, whether or not such action or failure to act varies or increases the risk of, or affects the rights or remedies of the undersigned [guarantor]. . . ." Thus, pretermitting whether the bank's delay in completing the foreclosure proceedings would otherwise have created a defense to the present action, Casgar has waived his right to assert such a defense. Accord *Delta Diversified v. C & S Nat. Bank*, 171 Ga. App. 625 (4), 630 (320 SE2d 767) (1984); *Pippin v. Brigadier Ind. Corp.*, 150 Ga. App. 401 (1) (258 SE2d 18) (1979).

5. The bank's motion for an assessment of damages against Casgar for pursuing a frivolous appeal is denied. While the question is a close one, we are persuaded by the complexity of the factual setting which gave rise to this litigation and by the extensive research which has been done by Casgar's counsel that the appeal was not so palpably without merit as to permit no other conclusion than that it was filed for purposes of delay only. See *Great A & P Tea Co. v. Burgess*, 157 Ga. App. 632 (4) (278 SE2d 174) (1981); OCGA § 5-6-6.

*Judgment affirmed. Birdsong, C. J., and Beasley, J., concur.*

DECIDED SEPTEMBER 6, 1988.

*Stephen C. Whicker*, for appellant.
*James D. Meadows, Jeffrey W. Kelley*, for appellee.