**John P. REGAN, Jr., Lois P. Regan, Plaintiffs–Appellants,**

v.

**U.S. SMALL BUSINESS ADMINISTRATION, Trust Company Bank of Augusta f/k/a The First National Bank of Thomson, Defendants–Appellees.**

No. 90–8332.

United States Court of Appeals, Eleventh Circuit.

March 15, 1991.

Rehearing Denied April 19, 1991.

---

Mark Thomas Salee, Atlanta, Ga., for plaintiffs-appellants.

Henry L. Whisenhunt, Jr., Asst. U.S. Atty., Augusta, Ga., for defendants-appellees.

Before FAY and JOHNSON, Circuit Judges, and PECK *, Senior Circuit Judge.

JOHNSON, Circuit Judge:

This case arises on appeal from the district court's summary judgment in favor of defendant United States Small Business Administration ("SBA") against plaintiffs Lois B. Regan and John P. Regan.

## I. STATEMENT OF THE CASE

### A. *Background Facts*

On November 3, 1983, Trust Company Bank of Augusta ("the Bank")[1] issued a loan for $80,000 ("the SBA loan") to Bishop Tile Company, Inc. ("Bishop Tile"). SBA guaranteed this loan. The Regans executed SBA Guaranty Form 148 ("the SBA guaranty"),[2] guaranteeing repayment of

---

* Honorable John W. Peck, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

1. The Bank was known as The First National Bank of Thomson at this time.

2. The SBA guaranty stated that "the Undersigned hereby unconditionally guarantees to the [Bank], its successors and assigns, the due and punctual payment when due, whether by acceleration or otherwise."

the SBA loan.[3] They secured the SBA guaranty with a lien on their personal residence ("the Regan deed to secure debt").

On July 27, 1984, Bishop Tile purchased an office building from the Bank for $78,000. In furtherance of this purchase, Bishop Tile executed a deed to secure debt in favor of the Bank to secure a $55,000 purchase money note ("the Bishop Tile building note"). Bishop Tile subsequently defaulted on the SBA loan and the Bishop Tile building note. In May of 1986, the Bank foreclosed on the Bishop Tile office building for a price of $53,329. In June of 1986, the Bank exercised its rights under the SBA security agreement and foreclosed on Bishop Tile's inventory and office equipment for a price of $2,000.

In December of 1986, the Bank accelerated the maturity of the SBA loan and demanded payment from the Regans for the balance of the loan pursuant to the SBA guaranty. The Regans did not make the payment, and on December 18, 1986, the Bank began to advertise the Regans' residence for foreclosure, with the sale scheduled for January 6, 1987. On January 6, 1987, the district court issued a temporary restraining order enjoining foreclosure on the Regan deed to secure debt. Pursuant to the participation agreement between the Bank and the SBA, the Bank requested that the SBA purchase the Bishop Tile loan. On March 31, 1988, the Bank transferred and assigned to the SBA all of its rights, title, and interest in the underlying SBA promissory note, the SBA guaranty, and the Regan deed to secure collateral.

B. *Procedural History*

On January 5, 1987, the Regans filed a complaint against the SBA seeking injunctive relief, discharge from the terms of the SBA guaranty, and cancellation of the Regan deed to secure debt. The SBA filed its answer and counterclaimed for judgment enforcing the SBA guaranty and the Regan deed to secure debt. In 1987, both the Regans and the SBA moved for summary judgment. By Order dated January 12, 1990, the district court denied the Regans' motion for summary judgment and granted the SBA's motion for summary judgment, but reserved for future determination the amount of the SBA loan deficiency owed by the Regans. 729 F.Supp. 1339. The district court subsequently entered judgment against the Regans in favor of the SBA in the amount of $70,325.37 plus interest. In this appeal, we determine whether, by signing the SBA guaranty, the Regans assumed an absolute and unconditional obligation to guarantee repayment of the SBA loan, thereby waiving any defenses, statutory or otherwise, which they may have had the right to assert.

## II. STANDARD OF REVIEW

This Court reviews *de novo* a district court's order granting a motion for summary judgment. *Ordway v. United States,* 908 F.2d 890, 893 (11th Cir.1990). This Court must determine whether there is any genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). All evidence and reasonable factual inferences therefrom are reviewed in the light most favorable to the party opposing the motion. *Hinesville Bank v. Pony Express Courier Corp.,* 868 F.2d 1532, 1535 (11th Cir.1989).

## III. ANALYSIS

"[F]ederal law governs questions involving the rights of the United States arising under nationwide federal programs" such as the SBA. *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979). Federal law, however, does not always require a uniform federal rule. *Id.* at 727–28, 99 S.Ct. at 1457–58. In determining whether to formulate a federal rule or adopt a state rule of decision, "a court must consider: (1) whether a federal program is such that it requires a uniform national rule; (2) wheth-

---

**3.** When the loan documents were executed, John and Lois Regan were employed by Bishop Tile, as the on-site construction supervisor and the job estimator, respectively.

er application of state law would frustrate *specific* objectives of the federal program; and (3) whether application of a federal rule would disrupt commercial relationships predicated on state law." *Federal Deposit Ins. Corp. v. Jenkins*, 888 F.2d 1537, 1545 (11th Cir.1989) (citing *Kimbell*, 440 U.S. at 728–29, 99 S.Ct. at 1458–59) (emphasis in the original).

## A. Whether the SBA Guaranty is Absolute and Unconditional

■ The Regans argue that the district court erroneously determined that SBA guaranties should be governed by a uniform federal rule, thereby mistakenly concluding that their obligations under the SBA guaranty were absolute and unconditional. They claim that the district court should have adopted state rules of decision as the federal law governing rights between the SBA and guarantors of SBA loans and therefore incorporated the following Georgia statutes: Ga.Code Ann. § 11–9–504(3) (1982) [4]; § 10–7–21 (1989) [5]; § 10–7–22 (1989).[6] The Regans argue that application of these statutes would result in the discharge of their obligations under the SBA guaranty.

The district court rejected the Regans' argument that Georgia law should provide the rule of decision. Citing decisions by the former Fifth Circuit, among others, the district court held that the federal courts had ruled that agreements such as the SBA guaranty are absolute and unconditional. *See United States v. Southern Cycle Accessories, Inc.*, 567 F.2d 296 (5th Cir.1978); *United States v. Outriggers, Inc.*, 549 F.2d

337 (5th Cir.1977). The court concluded that a uniform federal rule enforcing SBA guaranties should apply rather than state rules of decision. These cases were decided, however, before the Supreme Court's decision in *Kimbell Foods, supra*, and they did not consider the issue of incorporating state rules of decisions. Accordingly, they are not dispositive of this litigation.

In two cases involving the SBA, the former Fifth Circuit held that state rules of decision provided the appropriate basis for federal law governing the rights of the agency. In *United States v. Dismuke*, 616 F.2d 755 (5th Cir.1980),[7] the former Fifth Circuit held that the Georgia statute governing deficiency judgments applied to the SBA. In *United States v. S.K.A. Assocs., Inc.*, 600 F.2d 513 (5th Cir.1979), the former Fifth Circuit ruled that the Florida rule for lien priority controlled a suit by the SBA. In both these cases, the Court found that adoption of state law would not hinder the administration of the SBA. Moreover, in *Kimbell Foods*, 440 U.S. at 729, 99 S.Ct. at 1459, the Supreme Court rejected the SBA's argument that a national rule for priority on contractual liens was necessary and adopted state law instead. *See also United States v. New Mexico Landscaping, Inc.*, 785 F.2d 843, 845 (10th Cir.1986) (holding federal law governing issue of liability of guarantors incorporated state rules of decision). In light of these cases, the district court erred by failing to incorporate Georgia rules of decision as the applicable federal law to the SBA guaranty.

---

**4.** Section 11–9–504(3) requires that guarantors be notified of the secured creditor's sale of collateral. Under Georgia law, a creditor's failure to comply with this notice requirement creates a rebuttable presumption that the value of the collateral is equal to the indebtedness. *Emmons v. Burkett*, 256 Ga. 855, 353 S.E.2d 908, 910 (1987). The creditor may overcome this presumption and collect on any remaining deficiency by presenting evidence that the value of the collateral was less than the debt. *Id.*

**5.** Section 10–7–21 provides that any change in the terms of the contract is a "novation" and

that a novation without the guarantor's consent results in discharge.

**6.** Section 10–7–22 provides that any act by the creditor which injures or increases the risk of the guarantor results in the guarantor's discharge.

**7.** In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

■ Nevertheless, even incorporating Georgia rules of decision as the applicable federal law, the Regans' obligations under the SBA guaranty remain absolute and unconditional. Georgia courts, in numerous cases, have held that a guarantor may consent in advance to conduct which would otherwise result in statutory discharge. *See Bobbitt v. Firestone Tire & Rubber Co.,* 158 Ga.App. 580, 281 S.E.2d 324, 325 (1981) (holding that guarantor can waive protection of statutory discharge); *see also Casgar v. Citizens & S. Nat'l Bank,* 188 Ga.App. 234, 372 S.E.2d 815, 818 (1988). When they signed the SBA Guaranty, the Regans "unconditionally guarantee[d]" to pay the Bank when the SBA loan came due, whether by acceleration or otherwise. Accordingly, the Regans have waived the defenses available to them under Georgia law. *Id.*

### B. *The Georgia Confirmation Statute*

The Regans argue that the Bank's failure to "confirm" foreclosure of the Bishop Tile office building pursuant to Ga.Code Ann. § 44-14-161(a) (1982)[8] relieved them of their liabilities under the SBA guaranty or resulted in a cancellation of the Regan deed to secure debt. As collateral for Bishop Tile office building loan, Bishop Tile executed a deed to secure the debt on the office building ("the building deed to secure debt") in favor of the Bank. The building deed to secure debt contained a "dragnet" clause which stated that the deed will secure "such other and further indebtedness as may now be, or from time to time hereinafter shall become, owing to the [Bank] by [Bishop Tile]." When Bishop Tile purchased the office building, its other indebtedness included the SBA loan. The

Regans argue that, as a result of the dragnet clause, the building deed to secure debt secured the SBA loan as well as the Bishop Tile office building loan.

In May of 1986, the Bank foreclosed on the office building for $53,329. The Regans note that the foreclosure sale failed to raise sufficient funds to pay off the SBA loan and the Bishop Tile office building loan. The Regans argue that they should be released from their guaranty due because the Bank did not "confirm" the foreclosure pursuant to Section 44-14-161(a).

The district court held that the two debts, the SBA loan and the Bishop Tile building loan, were separate, having resulted from independent transactions. The court concluded that failure to confirm the foreclosure arising from one of the obligations does not bar an action on the separate obligation.

■ The Eleventh Circuit has previously incorporated the Georgia confirmation statute into the federal law governing the rights and obligations of the SBA. *Dismuke,* 616 F.2d at 758. For a guaranty contract to be tacked onto another lien through a dragnet clause, the parties to the guaranty contract must be the same as the parties to the lien containing the dragnet clause. *Citizens & Southern Nat'l Bank v. Gilbert,* 130 Ga.App. 219, 202 S.E.2d 718, 719 (1973); Ga.Code Ann. § 44-14-2 (1982). Moreover, the former Fifth Circuit held that "if there are separate debts arising from separate contractual obligations, failure to confirm the foreclosure arising from one of the obligations does not bar an action on the separate obligation, even if the obligations relate to the same subject matter." *Surety Managers, Inc. v. Stanford,* 633 F.2d 709, 711 (5th Cir.1980) (cita-

---

8. Ga.Code Ann. § 44-14-161(a) (1982) provides:
When any real estate is sold on foreclosure, without legal process, and under powers contained in security deeds, mortgages, or other lien contracts and at the sale the real estate does not bring the amount of the debt secured by the deed, mortgage, or contract, no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within 30 days after the sale, report the sale to the judge of the superior court of the county in which the land is located for confirmation and approval and shall obtain an order of confirmation and approval thereon.

tion omitted), *cert. denied,* 454 U.S. 828, 102 S.Ct. 121, 70 L.Ed.2d 104 (1981); *see also Vaughn & Co. v. Saul,* 143 Ga.App. 74, 237 S.E.2d 622, 625–26 (1977). The SBA loan and the Bishop Tile office building loan were separate contractual obligations. Accordingly, the district court correctly held that the Bank's failure to confirm the foreclosure of the Bishop Tile building loan did not modify the Regans' obligations under the SBA guaranty. *Id.*

## IV. CONCLUSION

For the foregoing reasons, we hold that Georgia law provides the rule of decision and that under Georgia law the Regans remain liable under the SBA guaranty. Accordingly, we AFFIRM the district court.