Patricia M. KOBLEUR, Individually and on Behalf of her Husband and Ward Joseph M. Kobleur, and on Behalf of All Other Persons Similarly Situated, plaintiff,

v.

GROUP HOSPITALIZATION AND MEDICAL SERVICES, INC., d/b/a Blue Cross and Blue Shield of the National Capital Area, defendant.

No. CV 290–354.

United States District Court,
S.D. Georgia,
Brunswick Division.

April 24, 1991.

Brent J. Savage, Richard H. Middleton, Jr., Savannah, Ga., Robert H. Benfield, Jr., Atlanta, Ga., for plaintiff.

Terry L. Readdick, Brunswick, Ga., William H. Major, and Michael R. Hurst, Atlanta, Ga., for defendant.

## ORDER

EDENFIELD, Chief Judge.

The defendant in this case has moved that the Court dismiss this action because the plaintiff has failed to exhaust her administrative remedies. To resolve the motion, the Court must decide whether the Federal Employees Health Benefits Act ("FEHBA" or "the Act"), 5 U.S.C. § 8901 through 8913 (1988) requires a person whose insurer has denied her health benefits claim to seek administrative review of the denial by the Office of Personnel Management ("OPM") before she challenges the denial in Court. The Court decides that the plaintiff should have pursued her administrative remedies before bringing this suit, and therefore GRANTS the motion. In addition, for reasons explained below, the Court orders Rule 11 sanctions against attorneys Brent J. Savage, Richard H. Middleton, Jr., Robert H. Benfield, Jr., and three other attorneys, as well as the law firms Adams, Gardner & Ellis and Middleton & Anderson.

## I. BACKGROUND

### A. *The Facts*

Although the defendant Group Hospitalization and Medical Services, Inc. ("Blue Cross") labelled this motion a motion to dismiss, it appended an affidavit as an exhibit to the motion. In her response, the plaintiff, Patricia M. Kobleur, also appended several exhibits to her brief in opposition. Accordingly, the Court converted the

motion into one for summary judgment on the exhaustion claim to enable it to consider these exhibits, and gave the parties appropriate notice of the conversion.[1]

Blue Cross agreed to provide a group health benefit plan for 1989 to the employees and retirees of the Federal Bureau of Alcohol, Tobacco and Firearms ("BATF"). Mrs. Kobleur's husband was a BATF retiree during 1989, suffering from Alzheimer's disease, a progressive dementia. During that year, Mr. Kobleur filed several claims for benefits under the Blue Cross plan. Paragraphs 9 and 10 of the complaint contain the Kobleur's chief dissatisfaction with the manner in which Blue Cross dealt with those claims.

9. Beginning in 1989 and continuing through January 1, 1990, Patricia Kobleur has filed claims on behalf of Joseph Kobleur with [Blue Cross] arising out of treatment for Alzheimer's disease, a progressive dementia. This treatment involved hospitalization at a local medical center as well as admission to a mental health facility. The latter admission required Mr. Kobleur to be adjudicated incapacitated and Mrs. Kobleur was appointed his legal guardian. [Blue Cross] treated Mr. Kobleur's claims for his hospitalization at Candler General Hospital as involving a "mental illness" and accordingly limited the benefits paid to Mr. Kobleur. [Blue Cross] then treated Mr. Kobleur's diagnosis of dementia disease for his commission to Charter Hospital of Savannah as being a physical illness, and denied complete coverage for this hospitalization.

10. Had [Blue Cross] properly recognized Mr. Kobleur's condition as a physical illness or disorder, and paid benefits under the group health plan issued to ATF accordingly, the amounts payable under said plan to date would have substantially exceeded the amount paid by [Blue Cross] because of its arbitrary decision to treat Mr. Kobleur's illness as a "mental illness or condition."[2]

---

**1.** *See Order,* No. CV 290–354, 1991 WL 326503 (S.D.Ga. filed April 3, 1991).

**2.** *Complaint* at 3–4.

Thus, the Kobleurs suggest that Blue Cross wanted to have it both ways. The complaint implies that Blue Cross would change its classification of Alzheimer's from physical to mental or mental to physical in such a way as to ensure that, whatever the Kobleurs claimed, their coverage would be minimized.

Mrs. Kobleur's sister, who was handling the Kobleur's financial affairs at the time, asked Janalyn Smith of Blue Cross if there was any way to appeal the alleged denial of benefits.[3] Ms. Smith said no.[4] The Kobleurs did not appeal the denial of benefits.

### B. The Statutory and Regulatory Scheme of FEHBA

FEHBA "established a comprehensive program to provide federal employees and retirees with subsidized health care benefits." *Hayes v. Prudential Ins. Co. of Amer.*, 819 F.2d 921, 922 (9th Cir.1987), *cert. denied*, 484 U.S. 1060, 108 S.Ct. 1014, 98 L.Ed.2d 980 (1988); *see Appeal of Bolden*, 848 F.2d 201, 202 (D.C.Cir.1988). As the Ninth Circuit explained in *Hayes:*

> Under the Act, the United States does not act as an insurer, but, through the Office of Personnel Management (OPM), contracts with various private carriers to develop health care plans with varying coverages and costs. The plans are for a term of one year, and are renegotiated annually.

819 F.2d at 922. Section 8902(j) of the Act requires the private carrier to agree to pay for or provide a health service or supply if OPM finds that the plan member is entitled to those services under the terms of the contract. In other words, OPM's interpretation of the plan's provisions binds the carrier. *Hayes*, 819 F.2d at 924. OPM must interpret the plan's provisions when a claim is denied and the enrollee appeals that denial to OPM pursuant to OPM's regulations:

> § 890.105 **Filing claims for payment or service.**
>
> (a) *General.* Each health benefits plan adjudicates claims filed under the plan.

An enrollee must initially submit all claims to the health benefits plan in which he or she is enrolled. If the plan denies a claim, the enrollee may ask the plan to reconsider the denial. If the plan affirms its denial or fails to respond as required by paragraph (b) of this section, the enrollee may ask OPM to review the claim.

> (b) *Time frames for reconsidering a claim.*
>
> . . . . .
>
> (3) If a plan either affirms its denial of a claim or fails to respond to an enrollee's written request for reconsideration ..., the enrollee may write to OPM and request that OPM review the plan's decision.

5 C.F.R. § 890.105 (1991). If OPM fails to reverse the carrier's denial of a claim, the enrollee may sue for relief. OPM, however, is not a proper defendant in such a case. Section 890.107 of the regulations, entitled "Legal Actions," states: "An action to recover on a claim should be brought against the carrier of the health benefits plan."

## II. ANALYSIS

### A. Summary Judgment

■ Under the summary judgment standard, the Court "must determine whether there is any genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law." *Regan v. United States Small Business Admin.*, 926 F.2d 1078, 1080 (11th Cir.1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). The district court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmoving party. *E.g., Regan*, 926 F.2d at 1080. This motion, however, concerns a dispute concerning a pure question of law. Specifically, the parties disagree whether the doctrine of exhaustion of ad-

---

**3.** *Affidavit of Ann Josephine Sullivan Horvath* at 4.

**4.** *Id.*

ministrative remedies applies in this case. The parties do not disagree on any facts material to this question.

### B. Exhaustion Generally

 Blue Cross says that Mrs. Kobleur has not exhausted her administrative remedies, and concludes that, as a result, the case should be dismissed. Exhaustion doctrine requires parties to pursue all administrative remedies before seeking judicial relief. *E.g., In re Inspection of Norfolk Dredging Co.*, 783 F.2d 1526, 1528 (11th Cir.1986); *Jean v. Nelson*, 711 F.2d 1455, 1505 (11th Cir.1983), *vacated en banc on other grounds*, 727 F.2d 957 (11th Cir. 1984). The rationale for the doctrine is that, "absent compelling circumstances ... the avenues of relief nearest and simplest should be pursued first." *Moore v. City of East Cleveland*, 431 U.S. 494, 524, 97 S.Ct. 1932, 1948, 52 L.Ed.2d 531 (1977) (Burger, C.J., dissenting); *see* B. SCHWARTZ, ADMINISTRATIVE LAW 502 (2d ed. 1984). Depending on the circumstances, exhaustion doctrine implicates either the court's jurisdiction, or the court's discretion. "[W]hen a plaintiff has failed to exhaust administrative remedies made exclusive by statute[,] a court will generally be deprived of jurisdiction." *Hironymous v. Bowen*, 800 F.2d 888, 892 (9th Cir.1986) (citations omitted); *see Haitian Refugee Center v. Nelson*, 872 F.2d 1555, 1561 (11th Cir.1989); *Townsend v. United States Dep't of Justice*, 799 F.2d 179, 181 (5th Cir.1986); *Power Plant Div., Brown & Root, Inc. v. Occupational Safety and Health Comm'n*, 673 F.2d 111, 115 (5th Cir.Unit B 1982). The exhaustion doctrine also applies when pertinent regulations contain the administrative remedy or remedies. *See United States v. Barry*, 904 F.2d 29, 31 (11th Cir.1990) (per curiam) (where litigant did not file written request for relief, as allowed by regulation, he had not exhausted appropriate administrative remedy). Failure to exhaust the remedy is a jurisdictional defect, however, only where Congress has designated that particular administrative remedy as a statutory precon-

dition to a lawsuit. *E.g., United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir.1983); *see Weinberger v. Salfi*, 422 U.S. 749, 766, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (1975). In all other cases, exhaustion is a matter of judicial discretion. *E.g., Haitian Refugee Center*, 872 F.2d at 1561; *Power Plant Div.*, 673 F.2d at 114–15. This discretionary branch of the exhaustion doctrine frequently is called the "judicially-created" exhaustion doctrine.

 Several policy considerations should inform a court's decision whether to impose a judicial exhaustion requirement in a given case. Among these are (1) judicial efficiency; (2) allowing the agency to exercise its discretion; (3) the use of the agency to make a factual record; (4) the benefit derived from drawing upon an agency's expertise; and (5) the avoidance of weakening the administrative process by allowing people to ignore administrative procedures. *See, e.g., McKart v. United States*, 395 U.S. 185, 194–95, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969); *Miller v. Stanmore*, 636 F.2d 986, 991 n. 5 (5th Cir.Unit A Feb. 1981);[5] *see also Moore*, 431 U.S. at 524–25, 97 S.Ct. at 1948 (Burger, C.J., dissenting); *Jean v. Nelson*, 711 F.2d at 1505–06. *See generally Ezratty v. Commonwealth of Puerto Rico*, 648 F.2d 770, 774–75 (1st Cir.1981) (Breyer, J.) (excellent general discussion of the policies behind exhaustion). These factors should be applied with a regard for the particular administrative scheme at issue. *E.g., Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975); *Doyal v. Marsh*, 777 F.2d 1526, 1535 (11th Cir.1985). The Court therefore will examine the exhaustion doctrine against a FEHBA backdrop.

### C. FEHBA and Exhaustion

The Court preliminarily notes that four reported district court decisions have addressed the question whether the FEHBA regulatory scheme contains an exhaustion requirement. Two courts have held that it does, *see Bateman v. Blue Cross–Blue*

---

5. Decisions that the Fifth Circuit, including Unit A, handed down prior to October 1981 bind this Court under *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc). *See Wu v. Thomas*, 863 F.2d 1543, 1547 n. 7 (11th Cir. 1989).

*Shield,* 579 F.Supp. 265 (M.D.Ala.1984); *Director, Edward J. Meyer Mem. Hosp. v. Stetz,* 433 F.Supp. 323 (W.D.N.Y.1977), and two have held that it does not. *See Eidler v. Blue Cross Blue Shield United,* 671 F.Supp. 1213 (E.D.Wis.1987); *Skoller v. Blue Cross–Blue Shield,* 584 F.Supp. 288 (S.D.N.Y.1984). The Court respectfully chooses to follow none of these decisions. None of the four decisions accord the proper deference to OPM's regulations and its interpretations of these regulations. These considerations are significant in the determination whether FEHBA contains an exhaustion requirement. In addition, the Court disagrees with the *Stetz, Eidler,* and *Skoller* courts' application of the general principles of exhaustion doctrine to FEHBA. The Court, therefore, will undertake its own analysis of the legal question at issue.

In section 8913(a) of FEHBA, Congress gave OPM the power to "prescribe regulations necessary to carry out this chapter." 5 U.S.C. § 8913(a) (1988). OPM promulgated regulations set forth in section T.B. of this order pursuant to that delegation of power. The silence of FEHBA itself about exhaustion does not mean that exhaustion doctrine has no place in FEHBA. OPM's regulations, promulgated under FEHBA, appear to contemplate that three relatively informal steps be taken before an enrollee brings an action in court to challenge a denial of a claim. First, the enrollee must submit the claim to the plan in which he or she is enrolled, and must allow the plan to "adjudicate" the claim. 5 C.F.R. § 890.-105(a). Second, "[i]f the plan denies the claim, the enrollee may ask the plan to reconsider the denial." *Id.* Third, if the plan does not change its decision or fails to respond, "the enrollee may ask OPM to review the claim." *Id.* Although the first step, the submission of a claim to the carrier, is phrased in the mandatory language, steps two and three are phrased in permissive language: the enrollee "may" ask for reconsideration; the enrollee "may" ask for OPM review.

■ The Kobleurs make two arguments against exhaustion based on the statutory and regulatory scheme. First, they argue that the statute does not explicitly mention exhaustion. The short answer to this argument is that an exhaustion requirement may have its genesis in the regulations promulgated under a statute. *See, e.g., Barry,* 904 F.2d at 31; *Doria Mining & Eng'g Corp. v. Morton,* 608 F.2d 1255, 1257 (9th Cir.1979), *cert. denied,* 445 U.S. 962, 100 S.Ct. 1650, 64 L.Ed.2d 237 (1980). Second, the Kobleurs contend that the permissive language in these regulations shows that there is no exhaustion requirement.

■ Congress gave to OPM the power to promulgate regulations under FEHBA. 5 U.S.C. § 8913(a) (1988). As a result, the agency's construction of those regulations is entitled to substantial deference. *E.g., Martin v. Occupational Safety and Health Rev. Comm'n,* —— U.S. ——, 111 S.Ct. 1171, 1175–76, 113 L.Ed.2d 117 (1991); *City of Alma v. United States,* 744 F.Supp. 1546, 1560 (S.D.Ga.1990). A reviewing court should give effect to an agency's interpretation of such regulations so long as the interpretation is reasonable. *Martin,* 111 S.Ct. at 1176. Put differently, the Court should accord deference to interpretations that "sensibly conform[ ] to the purpose and wording of the regulations." *Id.* (citing *Northern Indiana Pub. Serv. Co. v. Porter County Chapter of Izaak Walton League of Amer., Inc.,* 423 U.S. 12, 15, 96 S.Ct. 172, 173, 46 L.Ed.2d 156 (1975)).

OPM has consistently interpreted its regulations under FEHBA to require exhaustion. In December 1984, OPM published proposed rules relating to FEHBA in the Federal Register and requested comments on them. One comment suggested that OPM permit enrollees "to request a direct legal review by the courts in lieu of following administrative procedures for resolution of disputed claims." 51 Fed.Reg. 18562, 18563 (1986). OPM declined to implement this suggestion, stating:

In the employee benefits area, OPM has traditionally argued for dismissal of court cases when the individual has failed to exhaust administrative remedies. The purposes [*sic* ] of OPM's dis-

**1450**

puted claims review procedures is to assist enrollees in avoiding the costs and time delays associated with legal proceedings. Consequently, we do not favor a regulation calling for review by the courts before all administrative remedies have been exhausted.

*Id.* Because Congress statutorily empowered OPM to make binding decisions of contract interpretation on disputed claims, *see* 5 U.S.C. § 8902(j) (1988), OPM's interpretation of the regulations as mandating exhaustion is entirely reasonable. If exhaustion were not required, courts would have to interpret the terms of a plan without the benefit of OPM's prior interpretation. This result would undermine OPM's power to make binding decisions concerning the terms of plans it has approved under FEHBA.

 The court in *Bateman v. Blue Cross–Blue Shield,* 579 F.Supp. 265 (M.D.Ala.1984) proffered another reasonable reading of the regulation that does not rely on OPM's interpretation:

The word ["may"] in its context means just what it says: the claimant may seek OPM review, or not seek review and accept the carrier's decision; the choice is the claimant's.

*Id.* at 268; *cf. Mason v. Continental Group, Inc.,* 763 F.2d 1219, 1226 (11th Cir. 1985) (provision in pension plan that differences "may be taken up" through grievance procedure held to require exhaustion under ERISA), *cert. denied,* 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986). Either way, the conclusion is inescapable that the regulations do contain an exhaustion requirement.

D. *Should Exhaustion Be Required in This Case?*

1. Traditional Considerations and Exceptions

 The decision whether to apply the judicially-created exhaustion doctrine is a two-step process. The Court first must determine whether requiring exhaustion in this case serves the policies underlying the doctrine. If so, the Court must decide whether any of the recognized exceptions to the doctrine apply here. *E.g., Norfolk*

*Dredging,* 783 F.2d at 1529. Of the five policies underlying exhaustion listed above, four favor exhaustion in this case and one is irrelevant to OPM's FEHBA regulations. First, judicial efficiency would be served significantly if exhaustion were required. The plaintiffs want to certify a class action in this case, and numerous discovery battles have erupted already. Giving OPM a chance to resolve the controversy might obviate the need for the Court to mediate this brewing armageddon. Second, allowing OPM to resolve the dispute plainly would permit it to exercise its statutory power under section 8902(j) to interpret definitively the plan's terms. The third factor—allowing OPM to develop the factual record—has no application here. OPM's function in reviewing claims is "not to adjudicate disputed claims but to review carrier decisions on disputed claims." 51 Fed.Reg. 18562, 18564 (1986); *see* 5 C.F.R. § 890–105(a). Thus, OPM plays only a limited role in developing a factual record. Fourth, Congress has delegated to OPM the exclusive authority to negotiate and enter into contracts with carriers to provide health benefit plans for federal employees. Congress further gave OPM the power, by law, to interpret the terms of the individual plans. This delegation of authority shows that Congress respects OPM's expertise in the area of health benefits plans. Courts, of course, also are considered "expert" at contract interpretation. In the FEHBA scheme, however, the Court believes that OPM is in at least as good a position as the Court to interpret the contract. After all, the whole point of contract interpretation is to ascertain the intent of the parties. Who better to make this determination than the agency charged by law to enter into and conclusively interpret the contracts? Finally, to allow the bypass of administrative remedies in this case would encourage disgruntled claimants to ignore the procedures embodied in 5 C.F.R. § 890.105. On balance, these factors weigh strongly in favor of requiring exhaustion here. *See, e.g., Ecology Center of Louisiana, Inc. v. Coleman,* 515 F.2d 860, 866–67 (5th Cir. 1975) (advocating balancing).

The next step is to determine whether any of the recognized exceptions to the doctrine apply here. "Courts will not require exhaustion when the administrative remedy is inadequate because it does not exist, or would not provide relief commensurate with the claim, or would unreasonably delay the action and thereby create a serious risk of irreparable injury." *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1556 (11th Cir.1985) (citations omitted); *see Deltona Corp. v. Alexander*, 682 F.2d 888, 893 (11th Cir.1982). "Nor will exhaustion be required if the claim clearly will be denied, or where administrative action will not resolve the merits of the claim, as in a constitutional attack on the administrative scheme." *Panola Land Buyers*, 762 F.2d at 1556 (citations omitted); *Deltona Corp.*, 682 F.2d at 893.

The plaintiffs have made several strange arguments primarily premised on a comparison of the ERISA regulatory scheme and FEHBA. Some of these *non sequitur* arguments, however, touch upon exceptions to the exhaustion requirements. None is persuasive, but three deserve mention. The Kobleurs appear to argue that, because the administrative remedy has no provision for awarding the attorney's fees they seek, the administrative remedy does not provide relief commensurate with their claim. The Court rejects this contention: If the Court were to accept it, this (and every) administrative scheme would be jeopardized. Anyone could bypass an administrative remedy that has no attorney's fees provision by throwing in a claim for attorney's fees. Such a state of affairs would gut OPM's statutory authority under FEHBA.

The Kobleurs also argue that they received inadequate notice of their right to pursue the administrative remedy. OPM, however, in discussing the regulations governing the administrative remedy, stated:

> Another commenter noted that enrollees have no notice other than that contained in the regulations of the availability of OPM review. OPM has resolved this problem by amending the health benefits plan brochures to include notification of review by OPM.

51 Fed.Reg. 18562 (1986). The Kobleurs have offered no evidence that the brochures they possessed at the relevant time did not contain this notice requirement. Quite the contrary, they have appended a copy of one page of a brochure that *does* contain the notice. That notice was adequate. Moreover, once the hospital informed the Kobleurs that Blue Cross, not Mutual of Omaha, was their plan's underwriter, the Kobleurs inexplicably made no attempt to acquire a brochure or any other literature from Blue Cross. Even after they found out Blue Cross denied their claims, they did not request a brochure. Although the notice the Kobleurs received was far from ideal, the Court, in these circumstances, cannot say that this excuses them from making at least *some* effort to resolve the situation short of filing a class action in federal court.

Finally, the Kobleurs contend that, because some delay and increased expense would follow from requiring exhaustion, they would be irreparably harmed by having to repair to OPM. This argument is without merit. "Economic loss does not, in and of itself, constitute irreparable harm." *Randolph–Sheppard Vendors of Amer. v. Weinberger*, 795 F.2d 90, 108 (D.C.Cir. 1986); *see State of California ex rel. Christensen v. FTC*, 549 F.2d 1321, 1323 (9th Cir.) ("[L]itigation expenses, however substantial and nonrecoverable, which are normal incidents of participation in the agency process do not constitute irreparable injury."), *cert. denied*, 434 U.S. 876, 98 S.Ct. 227, 54 L.Ed.2d 156 (1977); *cf. West v. Bergland*, 611 F.2d 710, 719 n. 11 (8th Cir.1979) (a "litigant faces irreparable injury if judicial nonintervention results in harm of an extraordinary nature"), *cert. denied*, 449 U.S. 821, 101 S.Ct. 79, 66 L.Ed.2d 23 (1980).

### 2. Estoppel

■ The strongest vessel in the Kobleurs' fleet of objections is that Blue Cross should be estopped from asserting that the Kobleurs have not exhausted their administrative remedies because it contributed to the Kobleur's apparent belief that they

could not pursue review of the alleged denial of benefits. In support of their contention, the Kobleurs point to the affidavit of Ms. Sullivan Horvath, which states:

> At one point after our receipt from Blue Cross of written denials for the claims we had submitted, I talked once again with Janalyn Smith of Blue Cross. I asked Ms. Smith what Patricia's options were at this point. Ms. Smith answered, "None." I asked her why there were no options. Ms. Smith answered, "Because of the nature of the disease ... that's it. There's nothing else you can do."
>
> I asked Ms. Smith specifically if there was any way we could appeal Blue Cross' denial. Ms. Smith responded, "Once a form is sent and denied, that's it. There is no appeal." [6]

The Kobleurs are correct that the judicially created branch of exhaustion is subject to the doctrine of estoppel. *See, e.g., Kennedy v. Whitehurst,* 690 F.2d 951, 961 (D.C.Cir.1982); *Day v. United Auto Workers,* 466 F.2d 83, 93 (6th Cir.1972). Blue Cross has not denied that Ms. Smith made the statements set forth in Ms. Sullivan Horvath's affidavit. The Court therefore accepts these undisputed allegations as true. Nevertheless, the Kobleurs have not shown that they did not have at their disposal at the time a written plan brochure containing the OPM–required notice provision. They do argue that prior to the year Blue Cross insured them, Mutual of Omaha insured them, and that when their plan administrator switched to Blue Cross, they never received notice of the switch or a Blue Cross brochure. They have not alleged that they did not have a Mutual of Omaha brochure, nor that the Mutual of Omaha brochure did not contain the required notice.

The Court has found five reported federal decisions holding that a defendant was estopped to assert the defense of nonexhaustion of administrative remedies. In one case, the defendants actually attempted legal maneuverings during the administrative process designed to deny the plaintiff an effective legal remedy. *See Rauc-*

*cio v. Frank,* 750 F.Supp. 566, 573 (D.Conn. 1990). The Kobleurs do not allege that this occurred. In the other four cases, a representative of the agency or entity in which that administrative remedy theoretically resided misrepresented the availability of that remedy. *See Day,* 466 F.2d at 93, 97; *Ertell v. Department of the Army,* 626 F.Supp. 903, 910 (C.D.Ill.1986); *Jones v. Cassens Transport,* 538 F.Supp. 929, 932 (E.D.Mich.1982), *rev'd on other grounds,* 748 F.2d 1083 (6th Cir.1984); *Hardy v. Savannah Apartments, Inc.,* 217 F.Supp. 649, 660 (S.D.Ga.1962). Here, by contrast, the pertinent administrative remedy resided in OPM. Although Ms. Smith mistakenly said that the Kobleurs had no avenues left, she had no authority to speak on behalf of OPM. The most plausible reading of her comment is that she meant the Kobleurs had no appeal *within Blue Cross.* Indeed, insofar as Ms. Sullivan Horvath's phone call was a request that Blue Cross reconsider the denial of benefits, Ms. Smith was correct that no additional avenues at Blue Cross existed. *See* 5 C.F.R. 890.-105(a) (after denial of reconsideration, next step is to ask OPM to review the denial). The Kobleurs do not allege that anybody at OPM misrepresented the nature of the available administrative remedies. *Cf. Smith v. United States Postal Serv.,* 766 F.2d 205, 207 (6th Cir.1985) (per curiam) (exhaustion not required where EEOC personnel told plaintiffs that EEOC could afford them no relief). Furthermore, it appears that, during all these discussions concerning the benefit plan, the Kobleurs and Ms. Sullivan Horvath never requested that a copy of the plan be sent to them.

Although the question is a close one, the Court holds that Blue Cross is not estopped from asserting the defense that the Kobleurs did not exhaust their administrative remedies before filing this action. The factors militating toward the application of exhaustion doctrine in this case significantly outweigh Ms. Smith's arguably misleading statement and Blue Cross's failure to mail the Kobleurs a brochure of its plan when it became the Kobleur's insurer. In-

---

**6.** *Affidavit of Ann Josephine Sullivan Horvath* at 4.

deed, since the Court, as explained below, retains jurisdiction over the case pending exhaustion, requiring exhaustion should have only a *de minimis* impact on the Kobleurs.

3. Dismissal or Summary Judgment?

■ Although the parties have not addressed this issue, the Court decides that, even though it has converted this motion to dismiss into a motion for summary judgment, and even though the motion is meritorious, it will not enter judgment against the Kobleurs for failure to exhaust administrative remedies. The proper remedy for failure to exhaust administrative remedies is to dismiss without prejudice. *E.g., Donnelly v. Yellow Freight Sys., Inc.,* 874 F.2d 402, 410 n. 11 (7th Cir.1989), *aff'd on other grounds,* 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990). Because the only reason the Court converted the motion was to enable it to consider evidence submitted with the parties briefs without conclusively making findings of fact on issues inextricably intertwined with the merits of the plaintiffs' cause of action, *cf. Lawrence v. Dunbar,* 919 F.2d 1525, 1529–30 (11th Cir.1990), the Court will not actually enter summary judgment at this premature point in the litigation. The Court, instead, will dismiss the case without prejudice. To protect the Kobleurs' ability to pursue this matter here, the Court, as mentioned above, will retain jurisdiction over the case while they proceed with their administrative remedy. The case will be closed for statistical purposes, however.

III. RULE 11 AND THE SIGNATURE REQUIREMENT

■ The first sentence of Rule 11 of the Federal Rules of Civil Procedure states, quite plainly: "Every pleading, motion, and other paper of a party represented by an attorney *shall be signed by at least one attorney of record in the attorney's individual name,* whose address shall be stated." Fed.R.Civ.P. 11 (emphasis added). The plaintiff's attorneys have violated this plain and simple requirement on several pleadings in this case. The plaintiff's "Response to Defendant's Motion to Dismiss

for Lack of Proper Venue" is not signed by any attorney of record in the case. Instead, someone whose name appears to be A.M. Hodge signed the names of all the plaintiff's attorneys by signing the attorneys' names and appending "by A.M. Hodge" or "by AMH" to the signature. No attorney with those initials has filed an appearance in this case. Similarly, someone whose initials are "R.C.B." signed the plaintiff's motion for class certification and brief. No attorney of record signed those pleadings in his or her own name. Finally, someone whose initials are "R.B.T." signed the plaintiff's brief in opposition to the motion to dismiss in a like manner. No attorney of record signed that pleading in his or her own name.

These are clear violations of a simple rule. Pleadings must be signed by an attorney of record in the case. Period. These pleadings were not. The Court hereby orders the plaintiff's attorneys of record, Brent J. Savage, Richard H. Middleton, Jr., and Robert H. Benfield, Jr. to pay $100 each to the Clerk of Court for allowing their names to be signed by persons not attorneys of record in this case on a pleading that no attorney of record signed. The Court also orders those persons whose initials are "A.M.H.," "R.C.B.," and "R.B.T." to pay $100 each for writing the names of the attorneys of record on the aforementioned pleadings. Finally, the Court orders the law firms of Middleton & Anderson, and Adams, Gardner & Ellis to pay $500 each to the Clerk for permitting persons who appear to be other attorneys in the firms to violate the clear dictates of Rule 11. As to the individuals named, the Court orders these sanctions pursuant to Rule 11. As to the law firms involved, the Court orders the sanctions pursuant to its inherent power to control litigation in this Court. *See Donaldson v. Clark,* 819 F.2d 1551, 1557 n. 6 (11th Cir.1987) (en banc).

IV. CONCLUSION

FEHBA does contain an exhaustion requirement, although it is not a statutory prerequisite to a suit under the Act. Rather, the requirement is of the "judicially-created" variety. The Court has deter-

mined that it should apply the requirement in this case, and no exceptions to the doctrine mandate a contrary result. Additionally, although the Blue Cross representative to whom the Kobleurs spoke did not inform them that OPM had a mechanism by which they could ask for administrative review of Blue Cross's decision, that is not enough to estop the defendant to assert the defense of nonexhaustion under the circumstances of this case. The Court therefore GRANTS the defendant's motion to dismiss and DISMISSES the case WITHOUT PREJUDICE. The Court retains jurisdiction over the case pending completion of the proceedings at the administrative level, but this case shall be treated as closed for statistical purposes.

Finally, the Court levies sanctions, pursuant to both its inherent power to do so and Fed.R.Civ.P. 11, for violations of the signature requirement of Rule 11.

SO ORDERED.