**INTER–CITY PRODUCTS
CORPORATION**

v.

**John A. WILLEY, Sr., et al.**

No. 3–92–0703.

United States District Court,
M.D. Tennessee,
Nashville Division.

June 10, 1993.

Phillip Lester North, Michael F. Jameson, North, Pursell & Ramos, Nashville, TN, for plaintiff.

Patricia R. Young, Brewer, Krause & Brooks, Nashville, TN, R. Scott Tobin, Lane R. Frostbaum, Lisa Wilmore Waggoner, Weinstein, Rosenthal, Tobin & Caldwell, Atlanta, GA, for defendants.

## ORDER

HIGGINS, District Judge.

The Court has before it the defendants' objections (filed May 27, 1993; Docket Entry No. 67) to the Magistrate Judge's Report and Recommendation (entered May 14, 1993; Docket Entry No. 62) and defendants' motion (filed May 27, 1993; Docket Entry No. 65) for de novo determination.

The Court has independently reviewed the Magistrate Judge's findings, objections and considered the entire record de novo. The defendants' objections are without merit and are overruled. The Magistrate Judge's findings and conclusions are correct and they are adopted and approved.

Accordingly,

1. The motion (filed August 31, 1992; Docket Entry No. 6) and amended motion (filed September 14, 1992; Docket Entry No. 16) of the defendant, Wilco Supply Co., Inc., to dismiss is denied.

2. The motion (filed September 8, 1992; Docket Entry No. 10) of the defendants, John A. Willey, Sr., and Estate of Dorothy C. Willey, to dismiss is denied.

3. The defendants' motion (filed November 13, 1992; Docket Entry No. 33) to strike is denied.

4. The motion (filed December 22, 1992; Docket Entry No. 43) of the defendants to dismiss is denied.

It is so ORDERED.

## REPORT AND RECOMMENDATION

SANDIDGE, United States Magistrate Judge.

The following motions in this civil action were referred [1] to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) for consideration, submission of proposed findings of fact, and recommendation for disposition:

1) the motion of defendants John A. Willey, Sr., and the Estate of Dorothy C. Willey, Sr., to dismiss (filed September 8, 1992; Docket Entry No. 10);

2) the motion of defendant Wilco Supply Co., Inc. to dismiss (filed August 31, 1992; Docket Entry No. 6) and its amended motion to dismiss (filed September 14, 1992; Docket Entry No. 16);

3) the defendants' motion to strike and objection to evidence sought to be introduced by plaintiff (filed November 13, 1992; Docket Entry No. 33); and

4) the defendants' second motion to dismiss (filed December 22, 1992; Docket Entry No. 43).

The following motions were also referred [2] to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) for consideration and disposition:

1) the plaintiff's first motion to amend its complaint (filed September 10, 1992; Docket Entry No. 14); and

2) the plaintiff's second motion to amend its complaint (filed November 13, 1992; Docket Entry No. 33).

On November 23, 1992, and January 15, 1993, oral arguments were heard on the motions. For the reasons set out below, I recommend that the defendants' three motions to dismiss be denied. I also recommend that their motion to strike be denied. In a contemporaneously entered Order, I have granted the plaintiff's motions to amend its complaint.

## I. Background Summary

The plaintiff, Inter–City Products Corporation ("Inter–City"), is a corporation orga-nized under the laws of the State of Delaware and has its principal place of business in LaVergne, Tennessee. Inter–City is qualified to do business in Tennessee, and manufactures and distributes air conditioning products on a national level.

Defendant Wilco Supply Co., Inc. ("Wilco") is a corporation organized under the laws of the State of Florida and has its principal place of business in Ft. Lauderdale, Florida. Wilco sells air conditioning parts and equipment primarily in southern Florida. Defendant John Willey, Sr., is a resident of Florida and is the President of Wilco. The Estate of Mr. Willey's deceased wife, Dorothy Willey, is also a defendant in this action. Mrs. Willey also resided in Florida.

Inter–City filed this diversity action on August 6, 1992, claiming that Wilco has not paid for air conditioning inventory, valued at approximately 1.4 million dollars, which Inter–City supplied to Wilco through a third-party, Douglas–Guardian Warehouse Corporation ("Douglas–Guardian"). Douglas–Guardian is a corporation based in San Francisco, California, and was to hold Inter–City's inventory in a Florida warehouse for withdrawals made by Wilco. The inventory was supplied pursuant to a series of contractual agreements entered into between Wilco and Inter–City, as well as Wilco and Inter–City's predecessor in interest, the Heil–Quaker Corporation ("Heil–Quaker"). The date when Inter–City assumed Heil–Quaker's interests is not exactly clear, but it appears to have been sometime in 1991. Inter–City sued Mr. Willey and Mrs. Willey's Estate on the grounds that the Willeys had personally guaranteed the obligations of Wilco to Heil–Quaker.

The contracts and documents presented to the Court which are relevant to this action are as follows:

1. a Sales and Security Agreement ("Security Agreement") between Heil–Quaker and Wilco setting out the terms of the financed sale of inventory from Heil–Quaker

---

1. *See* Docket Entry No. 24 (entered October 5, 1992), No. 41 (entered December 21, 1992), and No. 44 (entered January 7, 1993).

2. *See* Docket Entry No. 24 (entered October 5, 1992) and No. 38 (entered December 10, 1992).

to Wilco; this Agreement was signed by the Director of Credit and Collections for Heil–Quaker on January 9, 1989, and signed by Mr. Willey as President of Wilco on January 10, 1989;

2. a Heil Heating and Cooling Products 1989 Sales Agreement ("1989 Distributor Agreement") between Heil–Quaker and Wilco arranging for Wilco to become a distributor of Heil–Quaker products in the State of Florida for a one-year period; this Distributor Agreement was signed on January 6, 1989, by Mr. Willey as President of Wilco and on January 9, 1989, by the Vice–President of Sales for Heil–Quaker;

3. a Personal Guaranty, dated January 9, 1989, from the Willeys to Heil–Quaker guarantying payment for goods and merchandise sold and delivered to Wilco from Heil–Quaker. The Guaranty states it is provided in consideration of the extension of credit from Heil–Quaker to Wilco;

4. an instruction letter setting out certain procedures for Wilco's withdrawal of Heil–Quaker inventory from the third-party warehouse of Douglas–Guardian; the letter, dated March 28, 1990, was written by the Credit Manager of Heil–Quaker and was signed on March 29, 1990, by Mr. Willey as President of Wilco and on April 17, 1990, by a representative of Douglas–Guardian;

5. a Warehouse Agreement–Number One between Heil–Quaker and Wilco establishing procedures for the supply of inventory by Heil–Quaker to the Douglas–Guardian warehouse for withdrawal by Wilco; the Warehouse Agreement, dated April 28, 1990, was signed by the Vice–President of Sales for Heil–Quaker and by Mr. Willey as President of Wilco; and

6. a Heil Heating and Cooling Products 1991 Distributor Sales Agreement ("1991 Distributor Agreement") between Inter–City and Wilco arranging for Wilco to become a distributor of Heil–Quaker products in the State of Florida for a one-year period; this Distributor Agreement was signed on January 31, 1991, by Mr. Willey as President of

Wilco and on February 4, 1991, by the Vice–President of Sales for Inter–City.

On August 31, 1992, Wilco filed its first motion to dismiss arguing that dismissal is appropriate pursuant to Federal Rule of Civil Procedure 12(b)(2), (3), (4), and (5).[3] On September 8, 1992, Mr. Willey and the Estate of Mrs. Willey ("the Willey's") filed their first motion to dismiss based on the same grounds asserted by Wilco. The defendants argue that Inter–City's attempted service was inadequate under Fed.R.Civ.P. 4 and the state statutes providing for service of process on out-of-state litigants. Further, the defendants argue that none of them have sufficient contacts with the State of Tennessee to support the assertion of personal jurisdiction over them under Tennessee's long-arm statute.

Inter–City responded by filing a motion to amend its complaint on September 10, 1992, and by separately responding to each motion to dismiss on September 10 and 21, 1992, respectively. Inter–City responds that the technical problems with service of process are not fatal to the complaint as the defendants were in fact served with the complaint and summons. Further, Inter–City responds that satisfactory contacts for the assertion of personal jurisdiction are provided by the series of agreements entered into by the parties which contain choice of forum provisions, and by negotiations which led to the execution and acceptance of the agreements. Inter–City's motion to amend changes the pleading caption and adds two paragraphs concerning claims made against the Estate of Mrs. Willey. The defendants object to the motion to amend arguing that the amendment fails to cure any of the deficiencies in the original complaint.

The defendants' motions to dismiss and Inter–City's motion to amend were referred to the Magistrate Judge. Oral arguments were heard on the motions on November 13, 1992. Three days prior to oral arguments, Inter–City filed a supplemental response to the defendants' motions to dismiss. On the day of oral arguments the defendants filed a

---

3. Wilco subsequently amended this motion to dismiss (filed September 14, 1992; Docket Entry No. 16).

motion to strike Inter–City's supplemental response and Inter–City filed a second motion to amend its complaint. The motions were taken under advisement and the parties were instructed to each file a supplemental brief regarding the issues in light of Inter–City's second motion to amend. The two motions were subsequently referred to the Magistrate Judge.

The parties filed supplemental briefs and the defendants filed a reply brief. On December 22, 1992, the defendants filed another motion to dismiss asserting the same grounds as the first motions and adding that dismissal is further warranted because Inter–City failed to make valid service of process upon the defendants within 120 days of the filing of the complaint as required by Fed.R.Civ.P. 4(j). This motion was also referred to the Magistrate Judge. On January 11, 1993, Inter–City filed its response to the latest motion to dismiss.[4] By its response, Inter–City asserted that it had served the defendants with valid process prior to expiration of the 120–day period. On January 15, 1993, oral arguments were heard on all of the referred and pending motions.

## II. Motion To Strike

The defendants' motion to strike seeks to strike affidavits and documents attached to Inter–City's supplemental response to defendants' motions to dismiss. The defendants specifically object to the affidavits of Michael Jameson, Bill Ridings, and Walter Ogden, and to the 1989 and 1991 Distributor Agreements. They assert that the affidavits and documents are objectionable on the grounds of hearsay, relevancy, prejudice, unauthenticated documents, lack of foundation, and testimony assuming facts not in evidence. They further argue that the supplemental response was not filed within 10 days of the filing of the motions to dismiss and thus is improper under Local Rule 8(b)(3).

Inter–City's initial response to the defendants' motions to dismiss were filed in accordance with the time deadlines of Local Rule 8(b)(3). As a timely response to the motions to dismiss was made, the defendants' argument based on Local Rule 8(b)(3) is groundless.

With respect to the two Distributor Agreements, Inter–City's second motion to amend its complaint incorporates these documents as exhibits in the statement of facts supporting its claim. As Inter–City's second motion to amend its complaint has been granted, these documents are properly before the Court as part of Inter–City's pleadings. *See* Fed.R.Civ.P. 10.

With respect to Michael Jameson's affidavit, the defendants object to Jameson's references to the 1989 and 1991 Distributor Agreements asserting that such references are hearsay because the documents have not been admitted into evidence. As these agreements are now before the Court pursuant to Inter–City's second amendment, the defendants's objections are moot.

With respect to Bill Ridings' affidavit, the defendants object that the affidavit fails to allege facts showing that the affiant is competent to testify, fails to allege facts showing the affiant's personal knowledge of the facts testified to, includes hearsay, includes a legal conclusion, and is vague and ambiguous. Ridings asserts that he is the Director of materials for Inter–City, and that he is familiar with the material supplies involved in this litigation. He further states that in supplying orders submitted by Wilco, various Tennessee facilities provided materials to Inter–City. Ridings goes on to list these facilities. I do not find that these statements contain a legal conclusion or hearsay as asserted by the defendants. Further, while Mr. Ridings' affidavit is somewhat brief and should have been written more thoroughly, I cannot say that it is so lacking that it should be stricken by the Court.

With respect to the affidavit of Walter Ogden, the defendants object that paragraphs 7 and 8[5] of the affidavit contain

---

4. *Inter–City subsequently supplemented its response with filings made January 13, 1993 (Docket Entry No. 50), and January 15, 1993 (Docket Entry No. 51).*

5. Paragraph 7 reads: "Shortly thereafter, in late 1988, I met personally with John A. Willey, Sr. at his request. Terms of Distributorship were discussed and from these discussions, agreements

hearsay, assume facts not in evidence, contain a legal conclusion, are irrelevant and confusing, and offer no probative evidence against defendants Wilco or the Estate of Mrs. Willey. The defendants' objections are not persuasive. I do not find that these paragraphs contain hearsay nor do I find that they should be stricken by the Court. Mr. Ogden's affidavit is considered for what it is worth.

I note also that the defendants have listed seven separate statements from Inter–City's supplemental response. They assert that these are statements of facts outside the pleadings which are unsupported by the evidence. Four of the statements concern the 1989 and 1991 Distributor Agreements. As set out above, the defendants' objections are therefore moot. The remaining objections are to statements which are essentially Inter–City's version of certain events and are expectedly self-serving. The defendants' objections are without merit but shall be considered as their statement that certain facts are disputed by them.

### III. Motions To Dismiss

Although the defendants together have four separate motions to dismiss before the Court, the arguments of the four motions are essentially the same and consist of four basic issues:

1. insufficient process;
2. insufficient service of process;
3. lack of personal jurisdiction of the Court over the defendants; and
4. lack of venue.

The most recent motion to dismiss also adds the argument that dismissal is warranted because of Inter–City's failure to serve process within 120 days after the complaint was filed.

### A. Insufficient Process, Insufficient Service of Process, and Failure to Serve Process Within 120 Days After the Complaint was Filed

■ The defendants argue a number of reasons why they were not properly served and why the process they received was invalid.[6]

I find that the majority of the defendants' arguments are moot as it is apparent that on December 2, 1992, the defendants were in fact personally served with valid and effective process. See Affidavit of Russell Tuttle (Docket Entry No. 51); Notice of Filing, Exhibit B (Docket Entry No. 50). On this date a process server hired by Inter–City served Mr. Willey at an address in Florida

---

were eventually finalized which are now the subject of this lawsuit."

Paragraph 8 reads: "For purposes of determining the origination of the various agreements between John A. Willey and Inter–City Products Corporation at issue in this litigation, Defendant John A. Willey, Sr. initiated contact with Plaintiff Inter–City Products Corporation (USA)."

6. The defendants argue that the attempted service of process was not in·compliance with Fed. R.Civ.P. 4(c)(2)(C)(ii) because no notice and acknowledgment form (ie; Form 18–A) and return envelope was included with the complaint and summons sent to them. They also argue that they were not served in accordance with Fed. R.Civ.P. 4(c)(2)(C)(i) which allows service to be made pursuant to state laws providing for service on out-of-state litigants because no service was made on the Tennessee Secretary of State as required by T.C.A. § 20–2–215.

They argue that plaintiff failed to serve the probate court with a complaint against the estate of Mrs. Willey as required by T.C.A. § 20–2–215. They also argue that the attempted service of process was not accepted by authorized agents.

Defendants assert that the complaint and summons sent to Mr. Willey and the estate of Mrs. Willey were sent to an address which is not the residence or business address of Mr. Willey, and that the person who signed for service is not an agent authorized to receive service for either Mr. Willey or the estate of Mrs. Willey.

In their third motion to dismiss, the defendants assert that plaintiff's most recent attempts to gain service of process were as inept as the earlier attempts. They argue that the attempted service on Wilco through the Tennessee Secretary of State is not proper as Wilco does no business in Tennessee so as to allow service by the Secretary of State. Further, they argue that the service received from the Secretary of State was improper under T.C.A. § 48–15–105(a) as it did not contain a statement of which the grounds listed in T.C.A. § 48–15–104(b) for service on the Secretary of State was relied on by Inter–City. The defendants also argue that the service they received was defective because the summons failed to indicate the time within which they must answer the complaint as required by Fed. R.Civ.P. 4(b) and because plaintiff served the two pending amended complaints with the original complaint.

with six sets of documents containing a summons, the original complaint, the first amended complaint, and the second amended complaint. Personal service is provided for by Tennessee state law [7], as well as by Fed.R.Civ.P. 4(c)(2)(A), and thus is in accordance with Fed.R.Civ.P. 4(e). Personal service on the defendants was made before expiration of the 120–day period and the defendants' argument based on the expiration of time under Fed.R.Civ.P. 4(j) is groundless.

■ The defendants' remaining arguments about the inadequacy of personal service are also meritless. The defendants first assert that the summons they were served was not in compliance with Fed.R.Civ.P. 4(b) which states:

[t]he summons shall ... state the name and address of the plaintiff's attorney, if any, otherwise the plaintiff's address, and the time within which these rules require the defendant to appear and defend.

The defendants assert that the summonses they received did not inform them when they were required to respond. Inter–City disputes this and asserts that the summonses did state that the defendants were required to file an answer within twenty (20) days of service. I note that the copies of the summonses submitted by each party differ materially as to whether a deadline for response was included in the summonses, as well as in other aspects.

Notwithstanding these unexplained differences, I find that even if the deadline was not included in the summonses, this absence would not cause Inter–City's process to be insufficient. As Inter–City argues, the particular facts of this action are that several motions to dismiss are pending which have effectively postponed the requirement that an answer be filed. *See* Fed.R.Civ.P. 12(a). Further, because of the pending motions and the procedural posture of this action, I fail to see how the defendants would be materially prejudiced by the lack of a response deadline or how the absence of a response deadline would cause the summons and complaint to be misleading in any way. Absent a showing of material prejudice to the defendants, dis-

missal of the complaint based on the asserted noncompliance with Rule 4(b) is not justified. *United Food & Com'l Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir.1984); *see also* Fed.R.Civ.P. 61 (errors or defects in the proceedings which do not affect the substantial rights of the parties are to be disregarded). I note also that under Rule 4(h), the Court may allow an amendment to process, upon such terms as are just, as opposed to dismissing an action for insufficient process.

■ For much the same reasons, the argument that service of process was ineffective because the defendants were served with copies of the two pending amended complaints as well as the original complaint is without merit. The defendants were in fact served with the filed complaint which is what Rule 4 requires. Nothing in Rule 4 mandates that surplusage material served with the complaint and summons renders the service of process invalid. Further, I do not see how the defendants could be prejudiced by receiving the two amended complaints in addition to the original complaint or that receiving the amended complaints rendered the service of process somehow misleading. The amended complaints contain only slight additions to the original complaint, and furthermore, the defendants are completely aware of the procedural posture of this action. The defendants' citation to *West Coast Theater Corp. v. City of Portland*, 897 F.2d 1519 (9th Cir.1990) lends no support to their argument as *West Coast* involved a plaintiff who served the defendant with a draft of the filed complaint which lacked seven pages and thus failed to serve the defendant with the filed complaint.

■ I am also not persuaded by the defendants' argument that the titles afforded to Mr. Willey in Inter–City's summons are so erroneous that the service of process is invalid. The service intended for Wilco was served on Mr. Willey as the "principal agent for Wilco Supply Co." and the service intended for the Estate of Mrs. Willey was served on Mr. Willey as the "principal agent for the Estate of Dorothy C. (Mrs. John A.) Willey

---

7. T.R.C.P. 4.04 and T.C.A. § 20–2–217.

Sr." The defendants assert that this title is insufficient for service on Wilco as the term "principal agent" is not a legally definable entity to receive service of process for Wilco. They further assert that the intended service on Mrs. Willey's Estate is invalid because Mr. Willey was not served as the administrator of the Estate.

The defendants' arguments are not well-taken. It is undisputed that Mr. Willey is an officer of Wilco. In fact, he is the President of Wilco. *See* Affidavit of John Willey (filed August 8, 1992; Docket Entry No. 8). Under either Fed.R.Civ.P. 4(d)(3) or T.R.C.P. 4.04, service upon an officer of a corporation is sufficient to serve the corporation itself. Further, Mr. Willey's signature on the several contracts entered into by Wilco which are a part of this action indicates that whatever his actual title may be with Wilco, he makes substantial decisions on behalf of Wilco, and for the purposes of service of process, is a "managing agent" for Wilco. Finally, I note that the main issue behind who may be served on behalf of a corporation is whether service on that person would adequately notify the corporation of the pending legal action taken against the corporation so that the corporation would not be prejudiced in defending itself. *See* 4A C. Wright & A. Miller, *Federal Practice and Procedure* § 1101 (1987 edition). In light of Mr. Willey's substantial involvement with Wilco, notice to Wilco of the present action was more than amply provided by Inter–City's service of process on Mr. Willey regardless of the title given to Mr. Willey in the summons.

I also find the service of process directed to Mr. Willey was sufficient to constitute service upon him as the personal representative of Mrs. Willey's Estate. Contrary to the defendants' argument, Inter–City did not attempt to serve the Estate of Mrs. Willey directly, but instead was serving Mr. Willey on behalf of the Estate as indicated by the summons itself. It is further apparent that Mr. Willey is the personal representative of Mrs. Willey's Estate and that Inter–City has filed a claim against the Estate in a Florida probate court. *See* Exhibit F to the Complaint. While conscientious attention to detail would have caused a more accurate sum-mons to be served, I cannot say that the summons which was served on Mr. Willey was so deficient that it renders the service of process insufficient. Further, I find that T.C.A. § 20–2–215 does not apply as this section deals only with service made through the Secretary of State, not with personal service.

The case cited by the defendants, *Estate of Alberta Norton v. Hinds,* 182 Ga.App. 35, 354 S.E.2d 663 (1987), is inapposite to the present situation as the case says nothing about what title is required in a summons in order for sufficient service upon an estate to be made. *Estate of Alberta Norton* dealt with a situation in which no personal representative had been appointed by the court so no real party existed upon whom service of a claim against the estate could be made. In the present case, it is undisputed that Mr. Willey is the personal representative of Mrs. Willey's Estate, and that he was personally served with process on behalf of the Estate.

**B.** *Lack of Personal Jurisdiction*

■ The defendants contend that the action should be dismissed under Fed.R.Civ.P. 12(b)(3) for lack of personal jurisdiction. They argue that all of the defendants are located in Florida, do business in Florida, and that their contacts with Tennessee are insufficient to establish personal jurisdiction over them in Tennessee. The defendants assert that neither the pleadings of Inter–City, the affidavits submitted by Inter–City, nor the relevant contracts show a sufficient factual basis to defeat their motion to dismiss.

■ In reviewing such a motion the burden of establishing jurisdiction is on the plaintiff, *Welsh v. Gibbs,* 631 F.2d 436, 438 (6th Cir.1980), who must in the face of a properly supported motion for dismissal, set forth specific facts showing that the court has jurisdiction. *Theunissen v. Matthews,* 935 F.2d 1454 (6th Cir.1991). The court, however, considers the pleadings and affidavits in the light most favorable to the plaintiff. *Welsh,* 631 F.2d at 438–439. When no discovery has taken place to assist in deciding the motion to dismiss, the plaintiff must only make a *prima facie* showing that personal

jurisdiction exists in order to defeat the motion to dismiss. *American Greetings Corp. v. Cohn,* 839 F.2d 1164, 1168–69 (6th Cir. 1988).

■ In diversity actions personal jurisdiction over a nonresident is determined by applying the law of the state in which the federal court sits. *Third National Bank in Nashville v. WEDGE Group, Inc.,* 882 F.2d 1087, 1089 (6th Cir.1989). T.C.A. § 20–2–214 provides for long-arm jurisdiction over non-residents who cannot be personally served with process within the State. The statute sets out six specific events which may subject a nonresident to the jurisdiction of Tennessee courts and also allows for jurisdiction to be asserted on "[a]ny basis not inconsistent with the constitution of this state or of the United States." T.C.A. § 20–2–214(a)(6). This statute has been interpreted to extend the jurisdiction of Tennessee courts to the maximum limit allowed by due process, *Masada Investment Corp. v. Allen,* 697 S.W.2d 332, 334 (Tenn.1985); *Third National Bank,* 882 F.2d at 1089, and thus, the issue before the Court is whether the assertion of personal jurisdiction is constitutionally permissible.

■ Jurisdiction is allowed as long as due process itself is not violated. *First National Bank of Louisville v. J.W. Brewer Tire Co.,* 680 F.2d 1123 (6th Cir.1982). This means that for jurisdiction to be asserted, a defendant must have minimum contacts with the forum state, or in other words, contacts substantial enough that the traditional notions of fair play and substantial justice are not offended. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *R.L. Lipton Distributing v. Dribeck Importers, Inc.,* 811 F.2d 967, 969 (6th Cir.1987). The question of personal jur-

isdiction[8] over a nonresident is based on a weighing of the facts of the particular case. *American Greetings Corp.,* 839 F.2d at 1169.

■ The seminal case in the Sixth Circuit for determining whether the exercise of personal jurisdiction is consistent with due process is *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374 (6th Cir.1968).[9] The Court in *Southern Machine* announced a three-part test for this determination:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine,* 401 F.2d at 381.

The first criterion of *Southern Machine* is the purposeful availment requirement. This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984); *Third National Bank,* 882 F.2d at 1090. The cornerstone of this requirement is that the party must have done something that purposefully establishes contacts with the forum state to the extent that "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 562, 62 L.Ed.2d 490 (1980). As the Supreme

8. I note at this point that although not addressed by the parties, it is apparent that this case involves a question of whether specific personal jurisdiction exists. Whether or not Tennessee would have general personal jurisdiction over the defendants based on "continuous and systematic contacts" with Tennessee is not an issue in this action.

9. I note that *Masada Investment Corp. v. Allen,* 697 S.W.2d 332, 334–35 (Tenn.1985), suggested that the three-part test of *Southern Machine* was "now too restrictive," and that a five-part test was more appropriate for analyzing the maxi-

mum limit to which personal jurisdiction can be asserted under Tennessee's long-arm-statute. Any limitation of the *Southern Machine* test suggested by *Masada,* however, has not been adopted by this District, *S & S Screw Machine Company v. Cosa Corporation,* 647 F.Supp. 600, 606–607 (M.D.Tenn.1986), or it appears by the 6th Circuit, which continues to apply the *Southern Machine* test in spite of the language of *Masada. See, Third National Bank in Nashville v. WEDGE Group, Incorporated,* 882 F.2d 1087 (6th Cir.1989).

Court has stated with respect to interstate contractual obligations, "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their actions." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985).

I find that the actions of Wilco fall within the type of activity which satisfies the purposeful availment requirement. Wilco engaged in an ongoing relationship with a business located in Tennessee, first Heil–Quaker and then Inter–City, for the purchase and distribution of air conditioning products which were manufactured in Tennessee and shipped to Florida. As part of this relationship, Wilco entered into several contracts from 1989 to at least 1991, which set out the terms of Wilco's purchase and distribution of the air conditioning products. Several of these contracts contained choice of law provisions which required Tennessee law to be applied to any disputes, as well as choice of forum provisions which designate Tennessee to be the forum of litigation. Wilco's purposeful availment is particularly shown by the fact that it engaged in a *series* of contracts. This is not a case where the unilateral activity of the plaintiff is the basis for personal jurisdiction, or where Wilco engaged in a one-time deal. Wilco purposefully chose not only to engage in a substantial contractual relationship with a Tennessee business, but chose itself to continue this relationship over a number of years. Further, the balance ledger for Wilco which was submitted by Inter–City with its pleading shows that Wilco was not a passive or one-time purchaser of products, but was actively involved in purchasing products from Inter–City for shipment and distribution to Florida. *See* Exhibit E to the Complaint.

Wilco attempts to show that no purposeful availment took place by arguing that its lack of contact with Tennessee is demonstrated by several things: its business is confined to Florida, its agents never physically entered Tennessee, it did not solicit business in Tennessee, the contracts did not arise and were not signed by Wilco in Tennessee, it sent payment for purchases to Illinois, and its products never entered into Tennessee's stream of commerce.

Purposeful availment does not require Wilco's physical presence in Tennessee, *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184, that it initiated the business relationship, *Southern Machine,* 401 F.2d at 382, or that the contracts were legally formed in Tennessee. *Lanier v. American Board of Endodontics,* 843 F.2d 901, 907 (6th Cir.1988). These are only factors to be considered in determining minimum contacts. Likewise, whether Wilco's products were in the Tennessee stream of commerce and where Wilco sent its payments are not determinative factors. Wilco's attempt to show a lack of minimum contacts fails because the noted facts do not negate the substantial contacts which Wilco created by entering into an ongoing relationship with a Tennessee business over a course of years to have products shipped from Tennessee to Florida. Nor do they negate the fact that the majority of these contracts indicated Tennessee as the State for forum and choice of law decisions. Wilco's argument would have the Court ignore the realities of modern business relationships. *See Burger King Corp.,* 471 U.S. at 476, 105 S.Ct. at 2184; *S & S Screw Machine Co. v. Cosa Corp.,* 647 F.Supp. 600, 607 (M.D.Tenn.1986). The facts of this action simply do not support an argument that Wilco could not have reasonably anticipated being haled into a Tennessee court if litigation arose out of its contractual arrangement with Inter–City.

Nor are the facts of this action analogous to the Tennessee Supreme court case of *Darby v. Superior Supply Co.,* 224 Tenn. 540, 458 S.W.2d 423 (1970)[10] as the defendants assert. *Darby* involved a one-time transaction of a few thousand dollars by an out-of-state individual resident, not a continuing

10. *Darby* involved an out-of-state individual defendant who solicited the purchase of lumber from a Tennessee business. The purchase was transacted by telephone and mail without the defendant ever entering Tennessee. The defendant was eventually sued on a breach of contract claim for failure to pay for the lumber. The court in *Darby* declined to exercise personal jurisdiction over the defendant under the predecessor to T.C.A. § 20–2–214.

business relationship between corporations involving numerous transactions of an aggregate amount of over a million dollars. Further, the *Darby* holding was criticized and explicitly limited to its particular facts by *Nicholstone Book Bindery, Inc. v. Chelsea House Publishers,* 621 S.W.2d 560, 562–63 (Tenn.1981).

The Tennessee Supreme Court in *Nicholstone* found that personal jurisdiction under T.C.A. § 20–2–214 could be asserted over an out-of-state corporation which had been sued on a breach of contract claim by a Tennessee plaintiff. Even though the corporation never sent representatives to Tennessee, and even though the underlying transaction involved only a one-time purchase by the defendant, the court in *Nicholstone* applied the *Southern Machine* test and found that personal jurisdiction existed. The defendants attempt to minimize the holding in *Nicholstone* to situations involving customized products which require the use of special manufacturing operations. I find this reading is erroneous. While the presence of customized products may have been a crucial factor in the finding that the out-of-state corporation could foresee being haled into court in Tennessee, nothing in *Nicholstone* limits the assertion of personal jurisdiction in breach of contract cases involving the purchase of good to those cases involving customized goods.

As to the second criterion of *Southern Machine,* that "the cause of action must arise from the defendants' activities" in Tennessee, I find that the cause of action against Wilco does arise from Wilco's activities in Tennessee. In the Sixth Circuit the "arising from" requirement need not be met by a cause of action that formally arises from the defendant's contacts but may be satisfied by a cause of action that merely has "a substantial connection with the defendant's in-state activities." *Southern Machine,* 401 F.2d at 384 n. 27; *see also Third National Bank in Nashville v. WEDGE Group, Inc.* 882 F.2d at 1091. Wilco's jurisdictional contacts with Tennessee are almost entirely based upon its entering into a series of contractual agreements with Inter–City and its predecessor in interest. Inter–City's cause of action against Wilco is based exclusively upon Wilco's alleged breach of these contracts. This cause of action literally arises from Wilco's contact creating activities in Tennessee, and has a substantial connection to these activities. Put quite simply, without Wilco's contractual agreements with Inter–City and its predecessor in interest, there would be no cause of action. I fail to see how the "arising from" requirement could be more amply satisfied.

*Southern Machine*'s third criterion is that Wilco's actions or the consequences caused by Wilco have a substantial enough connection with Tennessee to make the exercise of personal jurisdiction over Wilco reasonable. I note that while this criterion is an important one, once the preceding two factors have been satisfied, an inference of reasonableness arises which satisfies the third criterion absent a showing of unusual circumstances. *First National Bank v. J.W. Brewer Tire Co.,* 680 F.2d 1123, 1126 (6th Cir.1982).

Wilco has offered nothing which shows that this action involves unusual circumstances which would make the exercise of jurisdiction over them unreasonable. This is a contract action and Tennessee has an interest in seeing that its residents obtain the benefit of their bargain. *First National Bank,* 680 F.2d at 1126. Through its series of contracts, Wilco variously assented to Tennessee law being applied to any disputes involving the contracts and to Tennessee courts as a forum for such disputes. I fail to see how asserting personal jurisdiction over Wilco in Tennessee is unreasonable when Wilco has implicitly found such jurisdiction to be reasonable by assenting to Tennessee law and Tennessee forums.

The question of personal jurisdiction over Mr. Willey as an individual and over the Estate of Mrs. Willey, however, raises a different issue. Inter–City's claim against these defendants is based on the personal guaranty which the Willeys jointly signed in 1989 guarantying the obligations of Wilco to Inter–City's predecessor in interest. As the only alleged contact between the Willeys and Tennessee is the personal guaranty, the issue before the Court is whether their entering into this guaranty is a sufficient basis for the assertion of personal jurisdiction over them.

The Sixth Circuit addressed this particular question in *National Can Corp. v. K Beverage Co.*, 674 F.2d 1134 (6th Cir.1982) when it determined the reach of personal jurisdiction under Kentucky law[11]. In *National Can*, the Court, deciding what it called a "naked minimum contacts case," found that personal jurisdiction existed over a nonresident whose only contact with Kentucky was her signing of a guaranty for the benefit of a Kentucky business and her propriety interest, through her marriage to a shareholder, in the guaranteed company. *Id.* at 1137. The Court in *National Can* applied the *Southern Machine* test to the situation and found that purposeful availment existed because of the voluntary signing of the guaranty, the nonresident's economic interest in the guaranteed company, the fact that credit was extended due to the guaranty, and the fact that the guaranteed company was located in Kentucky. Applying *National Can* and *Southern Machine* to the present action, I find that personal jurisdiction can be asserted over both Mr. Willey and the Estate of Mrs. Willey.

The terms on the face of the personal guaranty state that the guaranty was entered into "in consideration of your extending credit to Wilco Supply Co. Inc." *See* Exhibit A to the Complaint. The "your" of the guaranty is clearly indicated at the top of the guaranty to be the Tennessee business Heil–Quaker, Inter–City's predecessor in interest. By providing a personal guaranty to a Tennessee business, and by providing the guaranty as consideration for the extension of credit by that business to Wilco, the Willeys can be held to have reasonably foreseen that their actions would have consequences in Tennessee and that they would be haled into Tennessee courts if the guaranty was invoked. *National Can*, 674 F.2d at 1138; *Southern Machine*. The Willeys created an indebtedness in Tennessee by giving a personal guaranty to a Tennessee resident and this satisfies the first *Southern Machine* requirement. *Reliance Electric Co. v. Luecke*, 695 F.Supp. 917, 920 (S.D.Ohio 1988). Further, Mr. Willey's involvement with Wilco as the President

of the company gave him particular reason to foresee that signing the personal guaranty could cause him to be haled into Tennessee courts because the 1989 Distributor Agreement which he signed prior to the personal guaranty contained a Tennessee choice of law and forum clause.

The second *Southern Machine* requirement is clearly satisfied as the guaranty agreements are the sole basis for the cause of action against the Willeys. *National Can*, 674 F.2d at 1138; *Reliance*, 695 F.Supp. at 920. As to the third *Southern Machine* requirement, the inference of reasonableness has not been negated by anything set forth by the defendants. *First National Bank*, 680 F.2d at 1126. Tennessee is an appropriate forum for litigation brought by a Tennessee business seeking to recover on the guaranty extended to the business. *See First National Bank*, 680 F.2d at 1128. I find this especially so when Tennessee jurisdiction extends to the underlying litigation based on the guaranteed company's failure to satisfy its obligations and the guaranty cause of action is part of the same litigation. While the Willey's connection to Tennessee consists of only the single guaranty contract, this connection is substantial enough to make jurisdiction in Tennessee reasonable because of the role the guaranty played in securing credit for Wilco. *Burger King*, 471 U.S. at 477–78, 105 S.Ct. at 2184–85.

### C. *Lack of Venue*

The defendants' sole argument with respect to venue is that venue in the Middle District is not proper under 28 U.S.C. § 1391(a). As I have determined that personal jurisdiction exists over the defendants so that they may be brought into court in Tennessee, venue within the Middle District is proper under Section 1391(a).

### RECOMMENDATION

Based on the foregoing, I respectfully RECOMMEND that the defendants' multi-

---

11. The Court determined that the Kentucky long-arm-statute extended to the full limits of due process. *National Can*, 674 F.2d at 1136.

ple motions to dismiss be DENIED and that their motion to strike also be DENIED.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of receipt of this report, or the proposed findings or recommendation to which objection is made. Failure to file objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

### ORDER

The following motions were referred[1] to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) for consideration and disposition:

1) the plaintiff's first motion to amend its complaint (filed September 10, 1992; Docket Entry No. 14); and

2) the plaintiff's second motion to amend its complaint (filed November 13, 1992; Docket Entry No. 33).

With respect to the first motion to amend, the second motion to amend essentially incorporates the changes sought by the first motion to amend. Therefore, I find that the first motion to amend is MOOT.

With respect to the second motion to amend, I have reviewed the motion, attached amended complaint, and the defendants' objections. By this motion, the plaintiff makes technical changes to the caption of the pleading, adds two paragraphs concerning the claims made against the Estate of Mrs. Willey, and adds a paragraph, with attached exhibits, concerning distributorship agreements between defendant Wilco Supply and the plaintiff. I do not find that allowing the amendments would be prejudicial to the defendants. I also find that granting the amendment would further the goal of adjudicating this action on its full merits. I note also that the defendants' objection to the amendment (Docket Entry No. 22) does not state an objection to the amendment itself, but asserts that the amendment does not cure the deficiencies of this action which are

the basis for the defendants' motions to dismiss. Accordingly, the plaintiff's second motion to amend is GRANTED.

Any party desiring to appeal this Order may do so by filing a motion for review no later than ten (10) days from the date this Order is entered on the docket. The motion for review must be accompanied by a brief or other pertinent documents to apprise the District Judge of the basis for appeal. *See* Rule 303(f), Local Rules for Magistrate's Proceedings.

So ORDERED.

1. *See* Docket Entry No. 24 (entered October 5, 1992) and No. 38 (entered December 10, 1992).